Rajiv MALIK, Plaintiff,

v.

CARRIER CORPORATION and Regina Kramer, Defendants.

No. 3:95 CV 1928(GLG).

United States District Court, D. Connecticut.

Nov. 21, 1997.

Gregg D. Adler, Livingston, Adler, Pulda & Meiklejohn, Hartford, CT, for Plaintiff.

Albert Zakarian, Day, Berry & Howard, Hartford, CT, for Defendants.

## OPINION

GOETTEL, District Judge.

This lawsuit arises out of the termination of plaintiff's employment by defendant Carrier Corporation. In what is becoming an ever-increasing trend in wrongful termination cases (at least in this district), plaintiff's counsel initially pled the usual "laundry list" of discrimination claims and collateral torts. Four counts eventually went to trial by jury. At the close of the plaintiff's case, the defendants moved for judgment as a matter of law. The Court reserved ruling at that time. At the conclusion of all of the evidence, the Court granted judgment as a matter of law in part and submitted two causes of action to the jury. The jury returned a verdict for the plaintiff on one of those counts, negligent infliction of emotional distress, and awarded the plaintiff $400,000 in damages against Carrier Corporation. Defendant Carrier [1] now moves for judgment as a matter of law following the jury's verdict on one count.

### FACTS

Briefly stated the factual background of this case is that the plaintiff, Rajiv Malik, was employed by the defendant Carrier Corporation in its Leadership Associates Program. The program, which was composed of persons with Masters of Business Administration (MBA) degrees from outstanding business schools, was designed to attract and develop the company's future leaders. It was a two-year rotational program, at the conclusion of which the participants were expected to obtain suitable positions somewhere within the company ("the final placement"). The plaintiff had a written employment contract which stated that he was an employee at will and could be released with reasonable notice.

---

1. Although Regina Kramer was a defendant during the trial of this case, all claims against Kramer were dismissed prior to the case being submitted to the jury.

During his first year-and-a-half in the program, the plaintiff had a rather mediocre career compared to the rest of the exceptional group in the program. At that point he encountered some difficulties concerning allegations by a female co-worker of sexual harassment. This led to an extensive investigation of the events, which did not reach any determinative conclusion but which did, based on the plaintiff's own admissions, result in the issuance of a letter to his personnel file stating that he had engaged in unacceptable conduct. This development, along with the plaintiff's difficulties in obtaining an acceptable offer for his final placement, caused him considerable emotional stress. At the conclusion of his two-year program, not having achieved a final position (and having already threatened the defendant with litigation), the plaintiff's employment with Carrier was terminated with a suitable notice period.

### PROCEDURAL BACKGROUND

This case has a lengthy and somewhat tortuous procedural history. Despite the rather narrow factual background, the initial complaint filed in September, 1995, contained eleven counts, two of which were federal claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981. The remainder were state-law claims. The jurisdictional statement indicated that the action was brought under this Court's federal question jurisdiction, 28 U.S.C. § 1331.

On September 17, 1996, this Court granted summary judgment with respect to the federal claims and dismissed the state claims without prejudice. Plaintiff then moved for reconsideration, arguing that the Court had subject matter jurisdiction over the state claims because jurisdiction could also have been premised on diversity of citizenship. Plaintiff was then allowed to amend his complaint, which he did on October 18, 1996. The amended complaint contained six state-law causes of action, four against the corporate defendant and two against the individual defendant for defamation and tortious interference with business relationships. In May of this year, the Court granted a motion

dismissing two of the claims against the corporate defendant, breach of implied contract and negligent misrepresentation (based upon a statute of limitations defense). On a motion for reconsideration, the dismissal of the count for negligent misrepresentation was withdrawn because of plaintiff's claim of a continuing course of conduct. (There were several other motions for reconsideration along the way which were denied).

The case, therefore, went to trial on four of plaintiff's claims: negligent misrepresentation, defamation, tortious interference with business relationships, and negligent infliction of emotional distress. During the trial the plaintiff withdrew his defamation claim against the individual defendant, Regina Kramer. At the conclusion of all of the evidence, the Court granted judgment as a matter of law as to the plaintiff's defamation claim against Carrier and his tortious interference claim against Kramer. This eliminated Regina Kramer as a defendant in the case. The Court then submitted the negligent misrepresentation and negligent infliction of emotional distress claims to the jury, while reserving final decision on the defendant's motion as to those counts. As noted earlier, the jury found in favor of defendant Carrier on the negligent misrepresentation claim and for the plaintiff on the negligent infliction of emotional distress claim, awarding compensatory damages in the amount of $400,000.

On October 20, 1997, defendant Carrier formally renewed its motion for judgment as a matter of law pursuant to Rule 50(b), Fed. R.Civ.P., and filed a supplemental Memorandum of Law in support thereof. (A separate motion for a new trial or a remittitur has recently been filed).

### RULE 50(b) STANDARD

A judgment as a matter of law will be entered only where there is no evidentiary basis for a reasonable jury to find for the prevailing party. A district court may grant a motion for judgment as a matter of law only if

there exists "such complete absence of evidence supporting the verdict that the jury's findings could only have been the

result of sheer surmise and conjecture," or the evidence in favor of the movant is so overwhelming "that reasonable and fair minded [persons] could not arrive at a verdict against [it]."

*Luciano v. The Olsten Corporation,* 110 F.3d 210, 214 (2d Cir.1997) (quoting *Cruz v. Local Union No. 3,* 34 F.3d 1148, 1154 (2d Cir. 1994)); *Song v. Ives Laboratories, Inc.,* 957 F.2d 1041, 1046 (2d Cir.1992). The trial court must view the evidence in the light most favorable to the non-moving party, who must be given the benefit of all reasonable inferences that the jury might have drawn in his favor. *Smith v. Lightning Bolt Productions, Inc.,* 861 F.2d 363, 367 (2d Cir.1988); *Samuels v. Air Transport Local 504,* 992 F.2d 12, 14 (2d Cir.1993). The court "cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury." *Katara v. D.E. Jones Commodities Inc.,* 835 F.2d 966, 970 (2d Cir.1987) (citations and internal quotation marks omitted). Governed by this stringent standard, we address the jury's finding of liability against Carrier on plaintiff's negligent infliction of emotional distress claim.

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Claims of emotional disturbance as an independent tort have been recognized only in relatively modern times.

> The law on this subject is still in a state of flux, and the various jurisdictions vary widely in their approach to the problem. All jurisdictions realize the danger of going too far in this field, as the element of proof is largely subjective and spurious claims are so difficult to disprove.

Wright, FitzGerald & Ankerman, *Connecticut Law of Torts* § 172 at 517 (3d ed.1991).

Historically, mental and emotional suffering was not compensated at common law in the absence of physical harm. In the oft-quoted passage from *Lynch v. Knight,* 9 H.L. Cas. 577, 598 (1861), Lord Wensleydale expressed the reluctance of common law to recognize an independent tort for emotional suffering: "Mental pain or anxiety the law cannot value, and does not pretend to redress, when the unlawful act complained of causes that alone."

As Professor Magruder stated in a 1936 Harvard Law Review article on "Mental and Emotional Disturbance in Torts," 49 Harv. L.Rev. 1033, this generalized reluctance could not be ascribed "to any inherent difficulty in assessing damages," since damages for emotional distress had frequently been awarded by juries in cases involving a physical touching, an independent tort, or where the plaintiff was within the "zone of danger." Rather, Professor Magruder suggested that this reluctance was

> due to policy considerations of a different sort. Adoption of the suggested principle [an independent tort for emotional distress] would open up a wide vista of litigation in the field of bad manners, where relatively minor annoyances had better be dealt with by instruments of social control other than the law. Quite apart from the question of how far peace of mind is a good thing in itself, it would be quixotic indeed for the law to attempt a general securing of it. Against a large part of the frictions and irritations and clashings of temperaments incident to participation in a community life, a certain toughening of the mental hide is a better protection than the law could ever be.

*Id.* at 1035. As late as 1934, the Restatement (First) of Torts § 46 stated that there was no recovery for emotional injury, even if intentionally inflicted, in the absence of an independent tort. *See* D. Crump, *Evaluating Independent Torts Based Upon "Intentional" or "Negligent" Infliction of Emotional Distress: How Can We Keep the Baby From Dissolving in the Bath Water?,* 34 Ariz. L.Rev. 439, 447 (1992).

In the late 1930's, however, Professor Magruder and Dean William Prosser, in two separate law review articles,[2] proposed the recognition of an independent tort of inten-

---

**2.** Calvert Magruder, *Mental and Emotional Disturbance in the Law of Torts,* 49 Harv. L.Rev. 1033 (1936), and William L. Prosser, *Intentional*

*Infliction of Mental Suffering: A New Tort,* 37 Mich. L.Rev. (1939).

tional infliction of emotional distress defined by a standard of outrageousness. Magruder argued that the law should develop a principle that severe "mental distress purposely caused [should be] actionable unless justified." 49 Harv. L.Rev. at 1035. The requirement of outrageousness, it was thought, would protect against a torrent of litigation over minor insults. *See* Mark P. Gergen, *A Grudging Defense of the Role of the Collateral Torts in Wrongful Termination Litigation,* 74 Tex. L.Rev. 1693, 1704 (1996); Crump, *supra* at 447. Thus, with the revision of the Restatement (First) of Torts in 1948, a new tort of infliction of emotional distress was recognized. Although this new tort was initially defined in terms of conduct that was not "privileged," the Second Restatement, of which Dean Prosser was the reporter, provided a more limited definition which included the requirement that the tortious conduct not only be intentional, but also "extreme and outrageous," exceeding all bounds of decency. Restatement (Second) of Torts § 46, cmt. d (1965); *see* Crump, *supra* at 449.

Gradually the tort of intentional infliction of emotional distress was recognized by most jurisdictions throughout the country. Connecticut followed the Restatement (Second) of Tort § 46 in defining a cause of action for intentional infliction of emotional distress by four essential elements: (1) that the actor intended to inflict emotional distress, or that he knew or should have known that the emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. *Petyan v. Ellis,* 200 Conn. 243, 253, 510 A.2d 1337, 1342 (1986).

Connecticut first recognized intentional infliction of emotional distress in an employment setting in the case of *Murray v. Bridgeport Hospital,* 40 Conn.Supp. 56, 62, 480 A.2d 610, 613 (1984). Following *Murray,* the courts have generally limited its applica-

tion to extreme and outrageous conduct by the employer. *See, e.g., Johnson v. Chesebrough–Pond's USA Co.,* 918 F.Supp. 543, 553 (D.Conn.) (dismissing claim of intentional infliction of emotional distress, stating that although methods employed by plaintiff's supervisor in terminating him "may not have been ideal employment practices, they [did] not constitute 'extreme and outrageous' conduct"), *aff'd,* 104 F.3d 355 (2d Cir.1996); *Jewett v. General Dynamics Corp.,* No. 530943, 1997 WL 255093 at *7 (Conn.Super., May 7, 1997) (holding that defendant-employer's failure to follow mandatory personnel policies governing performance evaluations, and its discipline and removal of plaintiff from his position without cause did not rise to the level of extreme and outrageous conduct).

In negligence cases, however, Connecticut like most other jurisdictions traditionally adhered to the "zone of danger" and "physical impact" requirements. The reluctance of the courts to recognize negligent, as opposed to intentional, infliction of emotional distress has been explained in various ways, including the fear of an overwhelming number of lawsuits, the unforeseeable and potentially crushing financial liability to defendants, a concern that fraudulent and trivial claims would be asserted, and the inability of the courts to devise a workable rule that would allow for a limited recovery without being arbitrary. Kenneth J. Kelly, *Workplace Litigation,* Practicing Law Institute 22nd Annual Institute on Employment Law, 476 PLI/ Lit 7, *103 (Sept.—Oct.1993).

In 1978, however, the Connecticut Supreme Court joined the ranks of several other states[3] in recognizing a tort of negligent infliction of emotional distress. *Montinieri v. Southern New England Telephone Co.,* 175 Conn. 337, 398 A.2d 1180 (1978). Citing Magruder's article, the court held that the "rationale for not insisting that, as a condition precedent to liability, there be an ensuing bodily illness is clearly applicable also to cases where the emotional distress is unintentionally caused." *Id.* at 344–45, 398 A.2d

---

**3.** *See, e.g., Battalla v. State of New York,* 10 N.Y.2d 237, 176 N.E.2d 729, 219 N.Y.S.2d 34 (1961); *Jarchow v. Transamerica Title Ins. Co.,* 48 Cal.App.3d 917, 122 Cal.Rptr. 470 (1975), *subsequently overruled by Soto v. Royal Insur. Corp.,* 184 Cal.App.3d 420, 229 Cal.Rptr. 192 (1986); *DeMello v. First Ins. Co. of Hawaii, Ltd.,* 55 Haw. 519, 523 P.2d 304 (1974)

at 1184. In holding that recovery for unintentionally-caused emotional distress does not depend on proof of either an ensuing physical injury or a risk of harm from physical impact, the court recognized that this tort must be limited so as not to open the floodgates to litigation over minor annoyances. *Id.* at 345, 398 A.2d at 1184 (quoting Magruder, *supra*, at 1035). Those limits, as reflected in the trial court's charge in *Montinieri*, were that the defendant would not be liable unless the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that the distress, if caused, might result in illness or bodily harm. *Id.*

Despite these limits, the creation of an independent tort of negligent infliction of emotional distress vastly expanded the scope of emotional distress torts, for not only did it bypass the intent requirement, it also eliminated the "outrageousness" requirement, the only practical limit on emotional distress torts. Crump, *supra* at 454. "Negligent conduct, by definition, is not as culpable as intentional conduct, and it is not as serious as conduct that is not only intentional but also 'outrageous.' " *Id.* (footnotes omitted) One commentator has even referred to the tort of negligent infliction of emotional distress as "an all-purpose tort." *Id.*

Not unexpectedly, with employment-related claims representing one of the fastest growing areas of litigation across the country,[4] including in Connecticut,[5] this newly created tort of negligent infliction of emotional distress gradually worked its way into the employment arena. As a very recent Connecticut Supreme Court case held,

> We first recognized a cause of action for negligent infliction of emotional distress in *Montinieri v. Southern New England Telephone Co.*, 175 Conn. 337, 345, 398 A.2d 1180 (1978). We concluded, however,

> that in order to state such a claim, the plaintiff has the burden of pleading that "the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that distress, if it were caused, might result in illness or bodily harm." *Id.; see also Morris v. Hartford Courant Co.*, *supra*, 200 Conn. [676] at 683–84 [513 A.2d 66 (1986) ]; 2 Restatement (Second), Torts § 313 (1965). Accordingly, negligent infliction of emotional distress in the employment context arises only where it is "based upon unreasonable conduct of the defendant in the termination process." *Morris v. Hartford Courant Co.*, *supra* at 682 [513 A.2d 66]. The mere termination of employment, even where it is wrongful, is therefore not, by itself, enough to sustain a claim for negligent infliction of emotional distress. "The mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior." *Madani v. Kendall Ford, Inc.*, 312 Or. 198, 204, 818 P.2d 930 (1991).

> Very few courts have addressed the requirements of a claim for negligent infliction of emotional distress within the context of an employment relationship as a whole, much less in the context of the termination of such a relationship. *See, e.g.*, L. Postic, Wrongful Termination: A State–by–State Survey (1994) pp. xvi-xvii.

*Parsons v. United Technologies Corp.*, 243 Conn. 66, 88–89, 700 A.2d 655, 667 (1997). We view this application of the doctrine of negligent infliction of emotional distress to employment relationships with some alarm. On the job, emotional distress is not an uncommon occurrence. (Indeed if we believe the comic strip *Dilbert*, it is an everyday occurrence). As the Connecticut courts have recognized,

> [t]ermination of employment is a relatively commonplace event. It is likely that a

4. Robert A. Machson & Joseph P. Monteleone, *Insurance Coverage for Wrongful Employment Practices Claims Under Various Liability Policies*, 49 Business Lawyer 689 (Feb.1994).

5. Calum Anderson, *Insurance Coverage for Employment–Related Litigation: Connecticut Law*, 18 W. New Eng. L.Rev. 199 (1996). Mr. Anderson attributes the increase in employment-related litigation in Connecticut to two recent phenomena—one economic and one legal. The first phenomenon, he describes, is the "dramatic downturn of the Connecticut economy, resulting in devastating job losses." *Id.* The second is the "recent creation of new statutory and common-law causes of action for alleged wrongful discharge and other attendant torts." *Id.*

person whose employment is terminated will suffer some degree of stress and anxiety regardless of whether the termination was lawful and proper or wrongful and tortious in nature. Negligent infliction of emotional distress in the employment context arises only where it is based upon unreasonable conduct in the termination process ... The mere termination of employment, even if wrongful, is not enough to sustain a claim for negligent infliction of emotional distress.... Such a claim must be accompanied by additional allegations of unreasonable conduct which occurred during the termination process or at the time of discharge....

*Saloomey v. A Child's Garden, Inc.,* No. 324092, 1996 WL 278252 at * 5 (Conn.Super., Apr. 29, 1996) (citations and internal quotations omitted). Moreover, when coupled with federal employment discrimination claims, which require a showing of discriminatory intent or adverse impact, the application of a negligence standard completely overwhelms the federal requirements.

█ The *Parsons* case, *supra,* indicates that such claims must still be limited to cases involving employment termination. It would be an unusual employment termination indeed which did not cause emotional distress to the employee. In fact, prior to July 1, 1993, no claim could be made for negligent infliction of emotional distress except for an employee's termination, since on-the-job sufferings were compensable under the Connecticut Workers' Compensation Act. *See Bennett v. Beiersdorf, Inc.,* 889 F.Supp. 46, 50–51 (D.Conn.1995) (discussing the exclusivity provision found in C.G.S.A. § 31–284(a)); *Vorvis v. Southern New England Telephone Co.,* 821 F.Supp. 851, 856 (D.Conn. May 25, 1993).[6] While the State of Connecticut still adheres to some vestiges of the "employment at will" doctrine, if an employer can be subjected to liability for an employee's emotional distress because of his termination, employ-

ment is no longer "at will." Thus, limiting the tort of negligent infliction of emotional distress to termination cases does not go far enough.

Moreover, requiring something more than mere termination of employment gives the employer little protection. There are usually events leading up to the termination sufficient to send the matter to the jury. Thus, to the extent an independent tort of negligent infliction of emotional distress is recognized in employment terminations, it is imperative that it be narrowly circumscribed to cases of severe emotional distress resulting from egregious conduct by the employer. Otherwise, this tort will eviscerate the concept of at-will employment. *See Collins v. Gulf Oil Corp.,* 605 F.Supp. 1519, 1523 (D.Conn.1985) (holding that the law does not recognize a cause of action for negligent infliction of emotional distress every time an employer negligently fails to comply with performance evaluation procedures resulting in an employee's termination and emotional distress); *Roberts v. Andersen Laboratories, Inc.,* No. CV 950370759S, 1997 WL 663303 at *9 (Conn.Super., Oct.14, 1997) (interpreting the requirements that a plaintiff prove that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that the distress, if caused, might result in illness or bodily harm, as equivalent to requiring proof that the defendant's conduct was "extreme and outrageous"); *Lund v. Stern & Company,* No. CV 94–0463413, 1995 WL 216846 at *1 (Conn.Super., Apr.4, 1995) (striking plaintiff's claim for negligent infliction of emotional distress where the plaintiff failed to allege any unreasonable conduct occurring at the time of discharge. "Where the allegations fail to establish that the meeting or any other aspect of the actual discharge was done in an inconsiderate, humiliating or embarrassing manner, [t]he mere fact of termination ...

---

**6.** In 1993, the Connecticut's Workers' Compensation Act was amended to exclude from the definition of "personal injury ... [a] mental or emotional impairment, unless such impairment arises from a physical injury or occupational disease." C.G.S.A. § 31–275(16)(B)(ii). Thus, since the workers' compensation bar on common-law claims applies only to personal injuries,

and since after July 1, 1993, emotional distress that does not arise from a physical injury or occupational disease is not a "physical injury," it naturally follows that the Workers' Compensation Act does not bar negligent infliction of emotional distress claims incurred after July 1, 1993. *Bennett v. Beiersdorf, supra,* 889 F.Supp. at 50.

does not give rise to a claim for unintentional infliction of emotional distress"); *Skierkowski v. Creative Graphics Services Inc.*, No. CV 94–0463242S, 1995 WL 283945 at *5 (Conn.Super., May 5, 1995) (holding that complaint must allege more than mere termination, such as that the termination was done in an inconsiderate, humiliating, or embarrassing manner).

We are not alone in our concern over the expansion of a negligent infliction of emotional distress claim into the employment arena. Many courts have held that the employment setting should not give rise to a negligent infliction of emotional distress claim. *See, e.g., Flynn v. Fahlgren & Swink, Inc.*, 746 F.Supp. 729, 731 (S.D.Ohio 1990). Courts have expressed concern with the nebulous nature of the injury, stating that "[e]motional distress is an intangible condition experienced by most persons, even absent negligence, at some time during their lives," and "that it is an unavoidable aspect of the 'human condition.'" *Thing v. La Chusa*, 48 Cal.3d 644, 666, 771 P.2d 814, 257 Cal.Rptr. 865 (1989). In the employment context, some courts have held that an employer does not owe a legal duty to an employee to refrain from certain activities because of the emotional health of the employee. *Semore v. Pool*, 217 Cal.App.3d 1087, 1105, 266 Cal. Rptr. 280 (1990).

Even in employment cases involving *intentional* infliction of emotional distress, the courts have expressed concern over the need to limit the application of emotional distress claims. The Third Circuit has observed that it is

> extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress.

*Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir.1988) (applying Pennsylvania law to find insufficiently outrageous conduct in

firing employee on the day he returned from bypass surgery), *appeal after remand*, 894 F.2d 647 (3d Cir.), *cert. denied*, 498 U.S. 811, 111 S.Ct. 47, 112 L.Ed.2d 23 (1990). On occasions, state appellate courts have upset jury verdicts for claims of emotional distress in employment context. For instance, in *American Road Service Co. v. Inmon*, 394 So.2d 361 (Ala.1980), the Alabama Supreme Court held that the trial court should have granted the defendant's motion for a directed verdict in an action by a former employee for intentional infliction of emotional distress. Although an employer has "no roving license to treat his employee in an extreme and outrageous manner," *id.* at 364, the court held that proof that the employer's investigation of the employee was disorganized and humiliating was not enough to show outrageous behavior.[7]

### DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW

■ This, however, is a diversity action brought under Connecticut law and we are compelled to follow the rulings of the Connecticut courts. In this case we appropriately charged the jury that:

> To prove this claim the plaintiff must prove by a fair preponderance of the evidence each of the following four elements; 1, that the defendant's conduct created an unreasonable risk of causing emotional distress; 2, that the defendant knew or should have known that its conduct created this unreasonable risk, and from the facts known to it at the time it acted, that the emotional distress, if caused, might result in illness or bodily harm to the plaintiff; 3, that the defendant's conduct was the proximate or legal cause of plaintiff's emotional distress; and 4, that the emotional distress that the plaintiff suffered was severe.

■ We further explained to the jury that for the plaintiff to meet his burden of proof,

---

**7.** Other states have been reluctant to allow claims of emotional distress where the employee is at will. *See Carrillo v. Illinois Bell Tel. Co.*, 538 F.Supp. 793, 799 (N.D.Ill.1982) (dismissing intentional infliction of emotional distress claim, noting that Illinois did not recognize such a tort in an employment at will situation); *Murphy v.*

*American Home Prods. Corp.*, 58 N.Y.2d 293, 303, 448 N.E.2d 86, 90, 461 N.Y.S.2d 232, 236 (1983) (denying recovery on an emotional distress claim, not only because the employer's action was not sufficiently outrageous, but also because plaintiff should "not be allowed to ... subvert the traditional at-will contract rule").

he could not merely establish that his employment was terminated and that he was upset.

> I instruct you, ladies and gentlemen, that the mere fact that the plaintiff was terminated at the conclusion of the two year program and that he was upset is not sufficient evidence for the plaintiff to meet his burden on this element. An employee may not recover damages from an employer simply because he was fired or denied a job, even if the employer's decision was very distressing for the employee.

The foregoing accurately states the law of Connecticut and no exception was taken to that charge.

Defendant Carrier now contends that there was inadequate evidence for the jury to reach the conclusion which it did. In its lengthy reply memorandum defendant continually argues that no reasonable jury could make the findings of negligence which this jury did. There is no suggestion, however, as to why this jury, which was selected by counsel, was not composed of reasonable people. No allegation has been made of arousing the passions of the jury with irrelevant material.

■ Carrier argues that its decision to investigate the possibility of sexual harassment involved an "everyday personnel decision" for which it should not be liable in damages. This argument has some force to it. An employer who is on notice of a harassment claim has a duty to take reasonable steps to eliminate it. *Torres v. Pisano*, 116 F.3d 625, 636 (2d Cir.1997). Moreover, fact finders should not use 20/20 hindsight to question an employer's evaluation of employees' performance. *See Meiri v. Dacon*, 759 F.2d 989, 995 (2d Cir.), *cert. denied*, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985). Nevertheless, the Connecticut Supreme Court has recognized that the cause of action for negligent infliction of emotional distress is available in the employment context just as it exists outside of the workplace. A properly charged jury concluded, in this case, that

this employer acted unreasonably. The facts supporting the jury's determination are as follows.

Following a female employee's complaint to her supervisor about inappropriate comments made to her by the plaintiff, the local supervisor conducted an investigation and believed that he had satisfactorily corrected the situation. It did not appear that the female employee who first voiced a complaint wished the matter pursued any further. Moreover, coincidentally, at that time, the plaintiff had left the Chicago office where the events occurred and had been transferred to Carrier's home office in Connecticut, so that repetition was impossible. Despite the fact that the original situation had been investigated and seemingly resolved to everyone's satisfaction, the Human Resources employees of Carrier determined to conduct an extended investigation of the events. When they were not given immediate cooperation by the local supervisor, they advised him that the plaintiff had earlier been involved in a prior incident of inappropriate conduct with respect to women in the workplace. (The information was transmitted in such a way as to incorrectly suggest that it related to sexual harassment, when, in fact, the earlier incident, while gender-related, was not sexual). The Human Resources employees, (all women) pursued the investigation and found another female employee in Chicago who also complained of the plaintiff's behavior. They were not able to reach any definitive conclusion as to the extent of the sexual harassment, since the plaintiff made claims concerning the activities of the original female complainant, and the entire matter became a credibility issue.[8] Nevertheless, based on the limited admissions of the plaintiff, Human Resources put in his personnel file a Letter of Record concerning the first complaint, which indicated that although the investigation of the sexual harassment incident was being closed, his behavior was "unacceptable." In addition, the Program Manager of the Leadership Program sent plaintiff a memorandum indicating that she would ad-

---

8. At trial the jury had, for the truth of the facts, only the plaintiff's version of the two incidents since the defendant's counsel did not present, either live or through deposition, the versions of either of the complaining women. Their hearsay complaints were admitted, however, for the limited purpose of showing the state of mind of the investigating Human Resources personnel.

vise prospective hiring managers of performance concerns over his lack of leadership skills and his lack of initiative. The plaintiff argued that these concerns were unfounded and were generated by defendant's overzealous sexual harassment investigation and that the combination of these two factors was the reason for his inability to obtain a final placement.[9]

During this period, the personnel in defendant's corporate headquarters were well aware of plaintiff's claims of severe emotional distress. His performance on the job in Connecticut was extremely poor, and he told them it was due to emotional distress that the Human Resources personnel had caused him. Plaintiff wrote a memorandum on July 21, 1994, to the Vice President of Human Resources outlining his claims of unfair treatment, the Program Manager's "campaign to destroy [his] chances of succeeding in the company," and the damage they had caused to him. He requested an opportunity to speak with the Vice President of Human Resources so that his career could "be restored and put back on track," failing which he would resort to litigation. The only response he received was a memorandum stating, in essence, that he was an employee at will who could be terminated upon two weeks

notice and that he had been treated fairly, along with a notice of termination.

There was sufficient evidence from which the jury could have concluded that the activities of defendant's Human Resources personnel were excessive and unnecessary[10] and, indeed, even retaliatory, causing the plaintiff severe emotional distress.[11] We cannot say, therefore, that there was a complete absence of evidence to support the verdict in plaintiff's favor.

The defendant makes certain specific arguments challenging the verdict. It first claims that plaintiff's cause of action was insufficiently proven since he did not present expert testimony establishing that the defendant's actions violated a standard of care governing the conduct of Human Resources professionals. While such evidence might have been appropriate *vel non,* Connecticut law does not require such testimony. Defendant relies upon *Santopietro v. New Haven,* 239 Conn. 207, 682 A.2d 106 (1996). That case did not involve negligent infliction of emotional distress but rather a negligence claim against baseball umpires for failing to properly discipline unruly players thereby causing harm. As the Court noted, such a claim was "akin to allegations of professional negligence or malpractice" and, therefore, required expert evidence as to the standard

---

9. His problems in obtaining a final placement were actually far more complex. The position that he most aspired to in Chicago was not available at that time and did not become available for some months after he was fired. He intentionally bypassed a possibility of employment overseas since it would have interfered with his attempts to obtain an immigration green card.

10. When the gender discrimination and sexual harassment laws were first passed by Congress, many employers did not perceive the importance of enforcing those laws vigorously. However, after a number of very large verdicts were returned in favor of female employees, most large companies started aggressive enforcement of those laws. In some instances the enforcement approaches have been excessive and there have recently been large verdicts for the male employees who were terminated by their employers for inappropriate conduct.

One commentator has suggested that the recognition of a tort of intentional infliction of emotional distress may have a deterrent effect on employers' investigating allegations of sexual

harassment due to the "all too real prospect of liability by second-guessing ... his sincere efforts, in an ambiguous case to root out sexual harassment." *Crump, supra* at 451.

11. In addition to the plaintiff's testimony, the jury was given plaintiff's memorandum of July 21, 1994, in which he states:

These baseless accusations against me have left me emotionally, mentally and physically drained. I have been extremely tense, have become withdrawn and depressed, and have spent countless nights wide-awake concerned about the serious impact of these events on my performance and career. In addition, I have suffered from a host of physical and mental ailments and my doctor has had to put me on medication, which has included antidepressants, antibiotics, sleeping pills and inhalation therapy to facilitate breathing. I have had no prior medical history for any of these conditions and all of them appeared only during the last three months. Further, due to fatigue and absent-mindedness caused by these conditions, I had an automobile accident in the second week of May 1994.

of care. *Id.* at 226, 682 A.2d at 115. In contrast, the instant case was fact-specific and concerned a sufficiently obvious situation that no expert testimony was needed for a jury verdict.

In its reply brief the defendant argues that expert testimony has been required to establish the requisite standard of care when a plaintiff alleges negligence by a member of a specialized profession. That may be true. However, defendant offers no support for its proposition that "Human Resources" is a specialized profession. Indeed, as noted above, the defendant argues that this was an "everyday personnel decision." We do not find that expert testimony was required to establish a standard of care for the Human Resources Department. Moreover, there is no body of law or legal standard concerning the manner in which investigations of claims of sexual harassment must be conducted.

Defendant also claims that the conversation in which the local manager was informed of an earlier misdeed of the plaintiff, which it describes as "the crux of the plaintiff's complaint," was a privileged conversation and that the jury should have been so advised. The conversation was far from the "crux" of plaintiff's negligent infliction of emotional distress claim. It was at most the beginning of it. The events which occurred over the next few months made up the bulk of plaintiff's claim. Moreover, the defendant at no point asked for a limiting instruction and never made this contention before the case was submitted to the jury.[12]

While we have grave reservations about the jury's verdict in this case, which would not have been ours had we been the fact finder, there is no legal basis for granting the defendant judgment as a matter of law.[13] The motions [Doc. nos. 109 and 125] are DENIED.

---

12. The Court did see an aspect of privilege involved in the intercorporate conversation and for that reason directed a verdict on the defamation claim and tortious interference with contract claims as to which it was a central part.

13. This decision is without prejudice to the other motion made by the defendant for a new trial or a remittitur.