Sandra L. NEWTOWN, Plaintiff,

v.

SHELL OIL COMPANY, Kenneth Johnson, Glenn Fillion, David Williams, and Jim Munson, Defendants.

No.3:97CV00167(GLG)

United States District Court,
D. Connecticut.

June 8, 1999.

Philip H. Bartels, John C. Fusco, Holland Kaufmann & Bartels, Greenwich, CT, for plaintiff.

L. Chris Butler, houston, TX, Gerald Dwyer, New Haven, CT, for Shell Oil Co.

Gerald P. Dwyer, New Haven, Ct, for Glenn Fillion, David Williams, Jim Munson, defendants.

James G. Williams, Cella, Macron & Williams, North Haven, CT, for Kenneth Johnson, defendant.

## *OPINION*

GOETTEL, District Judge.

This is an employment discrimination and sexual harassment action brought by plaintiff, Sandra L. Newtown, against her former employer, Shell Oil Co. ("Shell"), and four individual defendants (current or former employees of Shell), in which plaintiff claims that she was discriminated against on the basis of her sex, subjected to a hostile workplace environment, retaliated against, and discharged because of her objection to the unlawful employment practices. Plaintiff has asserted claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII") and Connecticut Gener-

al Statutes § 46a–60(a)(1) & (8), as well as pendent state claims for intentional and negligent infliction of emotional distress and tortious breach of employment contract. Defendants have moved for summary judgment on all counts of plaintiff's complaint. For the reasons set forth below, this Court grants the individual defendants' motions, and grants in part and denies in part defendant Shell's motion.

## SUMMARY JUDGMENT STANDARD

A motion for summary judgment may not be granted unless the Court determines that there is no genuine issue of material fact to be tried and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The burden of demonstrating the absence of a genuine dispute as to a material facts rests with the moving party, in this case the defendants. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). In assessing the record to determine whether any genuine issues of material fact exist, this Court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the non-moving party. *See McLee v. Chrysler Corp.,* 109 F.3d 130, 134 (2d Cir.1997). The moving party may obtain summary judgment by showing that little or no evidence may be found in the record in support of the nonmoving party's case. *See Gallo v. Prudential Residential Servs., Ltd.,* 22 F.3d 1219, 1223 (2d Cir.1994). When no rational jury could find in favor of the nonmoving party because the evidence in support of its case is so slight, there is no genuine issue of material fact and the grant of summary judgment is proper. *Id.*

The Second Circuit has held, however, that a district court should exercise particular caution when deciding whether summary judgment should issue in an employment discrimination case. *See id.* at 1224. Because writings directly supporting a claim of intentional discrimination are rarely, if ever, found among an employer's documents, a trial court must be particularly cautious about granting summary judgment when the employer's intent is at issue, which, of course, is almost always the case. Affidavits and depositions must be scrutinized for circumstantial evidence which, if believed, would show discrimination. *Id.*

Accordingly, we set forth the facts in the light most favorable to plaintiff.

## FACTS

Plaintiff Sandra Newtown was employed by defendant from October 29, 1991 until her termination on September 27, 1995. Ms. Newtown began her employment with Shell Oil Products Co.'s Marine Department in Houston, Texas as a Transportation Analyst. After receiving favorable performance reviews, plaintiff was promoted in July 1994 and was transferred to Shell Oil Co.'s Bridgework, Connecticut distribution plant to assume the position of Delivery Supervisor. Plaintiff replaced defendant Kenneth Johnson in that position. Johnson, who was responsible for training plaintiff as his replacement, made a lateral move to assume the position of Facilities Supervisor. Both plaintiff and Johnson, as co-supervisors, reported to defendant Glenn Fillion, Plant Manager. Plaintiff also names as defendants in this action David Williams (Shell's Human Resource Representative) and Jim Munson (Shell's Area Business Manager).

Plaintiff alleges that in September 1994, Johnson began to harass her, creating a sexually hostile or offensive workplace environment which was aided or maintained by Shell. Plaintiff specifically complains that: 1) on one occasion in the fall of 1994, Johnson referred to her as a "wench"; 2) on one occasion in October 1994, Johnson called her a "cunt," outside of her presence but within the hearing of several other employees who reported to the plaintiff; and 3) Johnson frequently referred to her as "woman" in a derogatory manner during the fall of 1994. Plaintiff complains that Johns's conduct created a hostile and

offensive work environment, caused her distress, embarrassment, shame, and humiliation, and undermined her supervisory authority over other employees.

Plaintiff reported Johnson's conduct to Fillion, her immediate supervisor, on November 1, 1994. Plaintiff alleges that Fillion took no action regarding her complaint, although Shell claims that Fillion met with Johnson to warn him about his conduct. On November 20, 1994, plaintiff notified Williams, Shell's Distribution Department's Human Resources Representative, of the alleged sexual harassment. On March 8, 1995, plaintiff sent a letter complaining about Johnson's conduct to Fillion and Munson, as well as to Ray Hahn, Fillion's superior, and to Bob Muser, Williams's superior. Shell sent a Human Resources representative, Deirdre Chestang, to investigate the charges. Shell claims that the report issued by Ms. Chestang concluded that there was no basis for the complaint. Munson and Williams met with Newtown on March 29, 1995 to inform her of the results of the investigation and to give her a poor performance review. Plaintiff alleges that a pattern of retaliation began after her first complaint in November 1994 to Fillion, including reprimands, poor performance reviews, and lower bonus payments, ultimately resulting in Shell terminating her employment on September 27, 1995.

Plaintiff first filed her complaint, as required under Title VII, with the Connecticut Commission on Human Rights and Opportunities ("CCHRO") and the Equal Employment Opportunity Commission ("EEOC"), alleging sexual discrimination and sexual harassment. Her complaint was released for suit by the CCHRO on October 29, 1996 and by the EEOC on November 29, 1996.

Plaintiff filed her complaint in federal court on January 27, 1997, setting forth twelve counts against the various defendants. Plaintiff asserts claims under Title VII in Counts One through Five of the complaint against all defendants. In Count One, she asserts that defendants' conduct denied her equal terms and conditions of employment on the basis of sex. Count Two adds the element of intent to the claims set forth in Count One. Count Three sets out a claim of sexual harassment, and Count Four sets out a hostile workplace environment claim. We fail to appreciate why plaintiff separated her Title VII sexual harassment claim into four separate counts, all of which rely on exactly the same facts. In this motion for summary judgment, we treat all four of these counts as one sexual harassment/hostile environment claim, and will do so at trial. Count Five sets forth plaintiff's retaliatory discharge claim. Plaintiff asserts claims under Connecticut's Fair Employment Practices Act, C.G.S. § 46a-60, in Counts Six and Seven against all defendants. She sets forth common law claims of negligent and intentional infliction of emotional distress against defendants Johnson and Shell in Counts Nine through Eleven, as well as a claim of tortious breach of employment contract against defendant Shell in Count Twelve.

## I. Individual Defendants

■ Section 703(a) of Title VII forbids "an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e–2(a)(1). Title VII limits liability to employers with fifteen or more employees, see 42 U.S.C. § 2000e(b), but provides no basis for personal liability of individual employees. See Tomka v. Seiler Corp., 66 F.3d 1295, 1314–17 (2d Cir.1995) (holding that "an employer's agent may not be held individually liable under Title VII"). Ms. Newtown admits that Shell was her employer; she asserts no claim that the individual defendants were her employers. Accordingly, we dismiss the Title VII claims in Counts One through Five as to the individual defendants.

■ Additionally, plaintiff asserts common law and state law claims against the individual defendants in Counts Six through Nine, claiming sexual harassment and discrimination under Connecticut's Fair Employment Practices Act, C.G.S. § 46a–60 against all of the defendants, as well as negligent and intentional infliction of emotional distress against defendant Johnson. Having dismissed the sole basis for federal jurisdiction as to the individual defendants, this court declines to exercise supplemental jurisdiction over the remaining common law and state law claims against the individual defendants. *See* 28 U.S.C. § 1367(c)(3). Therefore, we grant summary judgment in favor of each of the individual defendants on all Counts against them.

## II. Employer Liability

We proceed to analyze the claims against the remaining defendant, employer Shell Oil Co.

### A. Hostile Work Environment—Title VII

■ In order to prevail on a hostile environment sexual harassment claim under Title VII, a plaintiff must establish two elements. *Perry v. Ethan Allen, Inc.,* 115 F.3d 143, 149 (2d Cir.1997). First, she must prove that the harassment was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993) (internal quotation marks omitted); *see also Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). Second, the plaintiff must show that a specific basis exists for imputing the conduct that created the hostile environment to the employer. *Perry v. Ethan Allen,* 115 F.3d at 149. This second element will be discussed more fully below.

### 1. Was the Conduct Sufficiently Severe or Pervasive?

■ "[A] sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher,* 118 S.Ct. at 2283 (*citing Harris,* 510 U.S. at 21–22, 114 S.Ct. 367). The Supreme Court in *Harris* instructed courts to determine whether an environment is sufficiently hostile or abusive by "looking at all the circumstances," including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris,* 510 U.S. at 23, 114 S.Ct. 367. The incidents must be "more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Faragher,* 118 S.Ct. at 2283 n. 1 (citations omitted). "[O]ne of the critical inquiries in a hostile environment claim must be the environment. Evidence of a general work atmosphere ...—as well as evidence of specific hostility directed toward the plaintiff—is an important factor in evaluating the claim." *Perry v. Ethan Allen,* 115 F.3d at 149 (*quoting Hicks v. Gates Rubber Co.,* 833 F.2d 1406, 1415 (10th Cir. 1987)) (internal quotations and emphasis omitted). The Supreme Court has repeatedly emphasized that simple teasing, offhand comments, and isolated incidents, unless extremely serious, will not amount to discriminatory changes in the terms and conditions of employment. *See, e.g., Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 118 S.Ct. 998, 1003, 140 L.Ed.2d 201 (1998). Title VII is not intended to serve as a "general civility code for the American workplace." *Id.* at 1002. The Supreme Court has emphasized that "conduct must be extreme to amount to a change in the terms and conditions of employment...." *Faragher,* 118 S.Ct. at 2284. Furthermore, "isolated remarks or occasional episodes of harassment will not merit relief under Title VII; in order to be actionable, the incidents of harassment

must occur in concert or with a regularity that can reasonably be termed pervasive." *Tomka*, 66 F.3d at 1306 n. 5. However, "harassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex." *Oncale*, 118 S.Ct. at 1002. Thus, to prevail on a hostile work environment claim, the plaintiff must show that the workplace was permeated with discriminatory intimidation, ridicule, or insult that was sufficiently severe or pervasive to alter the conditions of her employment. *Gallagher v. Delaney*, 139 F.3d 338, 347 (2d Cir. 1998); *Tomka*, 66 F.3d at 1305.

■ In this case, construing the facts in plaintiff's favor, plaintiff was subjected to two incidents of offensive name-calling in the fall of 1994, one in which Johnson, a co-worker responsible for training the plaintiff, called her a "wench," and one incident in which Johnson called the plaintiff a "cunt" outside of her presence. In addition, plaintiff complains that Johnson frequently called her "woman" in a derogatory manner during the fall of 1994. Shell does not dispute these facts, although it disagrees that these utterances rise to the level of an actionable claim under Title VII.

Considering the factors delineated by the Supreme Court in *Harris*, and looking at all of the circumstances, we are doubtful that the conduct complained of rises to the level of a hostile work environment amounting to unwelcome sexual conduct which is sufficiently severe or pervasive to alter the conditions of plaintiff's employment. However, as the Second Circuit has repeatedly cautioned in employment cases, reasonable jurors might disagree. *See Gallagher*, 139 F.3d at 347. Here, the conduct complained of in the underlying sexual harassment claim consisted of the use of offensive epithets focusing on plaintiff's sex. Whether the conduct occurred frequently enough in the workplace to be deemed pervasive is a question of fact best left to a jury. Drawing all reasonable inferences in plaintiff's favor and looking at the totality of the circumstances, a reasonable jury could find that the discriminatory conduct was sufficiently pervasive to create a hostile or abusive work environment. Thus, a genuine issue of material fact exists as to whether the conduct occurred with sufficient regularity to be viewed as pervasive or permeating the workplace with discriminatory intimidation, ridicule, or insult. For this reason, summary judgment on the hostile work environment claim is inappropriate, and is denied.

### 2. Can the Discriminatory Conduct be Imputed to the Employer?

■ The second element the plaintiff must show is that a specific basis exists for imputing the discriminatory conduct that created the hostile environment to the employer. *Perry v. Ethan Allen*, 115 F.3d at 149. A plaintiff pursuing a hostile work environment claim must establish a basis, rooted in common law agency principles, on which to hold an employer liable for the conduct of its employees. *Gallagher*, 139 F.3d at 348. The Supreme Court has recently held that "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee.... No affirmative defense is available ... when the supervisor's harassment culminates in a tangible employment action, such as discharge...." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 2270, 141 L.Ed.2d 633 (1998); *Faragher*, 118 S.Ct. at 2292–93. This holding creates a new standard for employer liability when the harassment causing the hostile work environment is perpetrated by a supervisor. *Burlington* and *Faragher* did not address the issue of harassment by co-workers, for which an employer is not liable unless "the employer either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it." *Karibian v. Columbia University*, 14 F.3d 773, 780 (2d Cir.

1994); *see also DeWitt v. Lieberman,* 48 F.Supp.2d 280, 290–91 n. 8 (S.D.N.Y.1999). Thus, the threshold inquiry into Shell's vicarious liability for Johnson's conduct is whether Johnson acted as Newtown's supervisor.

■ Johnson was responsible for training Newtown in the position of delivery supervisor during the fall of 1994. Although both Johnson and Newtown reported to Fillion, a question of fact exists whether Johnson exercised de facto authority over Newtown sufficient to affect the terms and conditions of employment during her training period. *See DeWitt,* 48 F.Supp.2d at 288–89. Drawing all reasonable inferences in favor of plaintiff as the nonmoving party, we will assume that Johnson was Newtown's supervisor for the purposes of this motion. Thus, the standard for the vicarious liability of an employer for a supervisor's harassment delineated in *Burlington* and *Faragher* applies in this case. Shell's vicarious liability to the plaintiff will depend on findings by the trier of fact that Johnson's conduct amounted to an actionable hostile work environment and that Johnson was plaintiff's de facto supervisor. Furthermore, because plaintiff suffered an adverse employment action, i.e., the termination of her employment following her complaints about Johnson's conduct, if the jury finds that Johnson was plaintiff's supervisor, Shell may not present an affirmative defense based on its anti-harassment policy. *See Faragher,* 118 S.Ct. at 2292–93; *Burlington,* 118 S.Ct. at 2270. Therefore, at this juncture, we need not consider whether Shell provided a reasonable avenue for complaint, or whether its response to Ms. Newtown's complaints was reasonable or adequate for the purposes of this motion.

In sum, just as the jury must consider whether the discriminatory conduct was sufficiently pervasive to constitute a hostile work environment, the question of Shell's vicarious liability for the conduct of its employees must also go to the jury. Because plaintiff has produced sufficient evidence to create a genuine issue of material fact as to whether Johnson, acting with de facto supervisory authority over plaintiff, engaged in sufficient discriminatory conduct to create a hostile work environment, we deny defendant Shell's motion for summary judgment on plaintiff's sexual harassment/hostile environment claim.

*B. Retaliation—Title VII*

Plaintiff asserts in Count Five of the complaint that Shell retaliated against her by firing her after she complained of Johnson's offensive remarks. Retaliation claims under Title VII are analyzed under a three-part rule, which is an "allocation of the burden of production and an order for the presentation of proof in Title VII" cases. *Gallagher,* 139 F.3d at 349 (*quoting St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). After plaintiff first demonstrates a prima facie case of retaliation, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the complained-of action. If the defendant meets its burden, plaintiff must demonstrate that there is sufficient potential proof for a reasonable jury to find that the proffered legitimate reason is merely a pretext for impermissible retaliation. *Id.*

■ In order to establish a prima facie claim of retaliation, plaintiff must show that: 1) she engaged in a protected activity; 2) the employer was aware of the activity; 3) the employer took adverse action against the plaintiff; and 4) there is a causal connection between the protected activity and the adverse action. *Tomka,* 66 F.3d at 1308; *Distasio v. Perkin Elmer Corp.,* 157 F.3d 55, 66 (2d Cir.1998); *Reed v. A.W. Lawrence & Co.,* 95 F.3d 1170, 1178 (2d Cir.1996). Plaintiff has satisfied the first three elements of a prima facie retaliation claim, because: 1) she had filed a complaint with the CCHRO and EEOC, *see Grant v. Hazelett Strip–Casting Corp.,* 880 F.2d 1564, 1569 (2d Cir.1989); 2) she had notified her superiors at Shell of her complaints, both orally and in writing; and

3) Shell terminated plaintiff's employment subsequent to her complaints. Whether plaintiff has established the fourth element, a causal connection between the protected activity and her firing, is a question of fact properly reserved to a jury. Courts have noted that temporal proximity can give rise to a reasonable inference of a causal connection between the protected activity and the adverse employment action.

 In the instant case, Newtown alleges that Fillion began a pattern of retaliatory conduct in December of 1994, giving her a poor performance review within a month after her first complaint to Fillion about Johnson's conduct. Newtown received another poor performance review on March 29, 1995, in the same meeting in which Munson and Williams notified her of the results of Shell's investigation into her written complaint. Newtown was fired in September of 1995, approximately 10 months after her first complaint to Fillion and six months after she filed her written complaint. Considering the short time between Newtown's first complaint and her first poor performance review, a reasonable jury could infer a causal connection between the protected activity and the retaliation.

After a plaintiff presents a prima facie claim, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. See McDonnell Douglas v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); St. Mary's Honor Ctr., 509 U.S. at 506, 113 S.Ct. 2742. Shell contends that Newtown's work performance was unsatisfactory, resulting in poor performance reviews, reprimands, and ultimately, in her dismissal.

Once an employer has proffered a nondiscriminatory rationale for its actions, the factual inquiry proceeds to a new level of specificity. Viola v. Philips Medical Systems of North Am., 42 F.3d 712, 717 (2d Cir.1994) (citing St. Mary's Honor Ctr., 509 U.S. at 516, 113 S.Ct. 2742). The burden shifts back to the plaintiff to produce sufficient evidence to support a rational finding that the employer's proffered non-discriminatory reason for the adverse employment action was false and pretextual, and that the real reason for the adverse action was discriminatory. See Fisher v. Vassar College, 114 F.3d 1332, 1339 (2d Cir.1997) (en banc). Plaintiff alleges that prior to her complaints about Johnson's conduct, she had received several favorable job performance reviews and promotions, and that the unfavorable reviews and criticism began shortly after her first complaint to Fillion. The temporal proximity of plaintiff's complaints to management and the adverse employment actions could support an inference of pretext by a reasonable jury. Therefore, because a genuine issue of material fact exists as to whether plaintiff has produced sufficient evidence to allow a reasonable jury to find retaliation, we deny defendant Shell's motion for summary judgment on Count Five.

### C. Connecticut's Fair Employment Practices Act

Plaintiff asserts state law claims in Counts Six and Seven under Connecticut's Fair Employment Practices Act, C.G.S. § 46a–60(a)(1). "Connecticut courts have looked to federal precedent in the employment discrimination arena for guidance in enforcing the state antidiscrimination statutes." Hill v. Pinkerton Sec. & Investigation Serv., Inc., 977 F.Supp. 148, 153 (D.Conn.1997); see also Levy v. Commission on Human Rights & Opportunities, 236 Conn. 96, 103, 671 A.2d 349 (1996). Accordingly, we analyze the state law claims under the same standards as Title VII claims, as noted above, and deny defendant Shell's motion for summary judgment on Counts Six and Seven.

### D. Intentional Infliction of Emotional Distress

Plaintiff asserts a claim of intentional infliction of emotional distress against defendant Shell in Count Ten. She alleges in

conclusory fashion that Shell's conduct was extreme and outrageous and that Shell intended to inflict severe emotional distress, knew or should have known that its conduct would cause her severe emotional distress.

Under Connecticut law, to state a cause of action for intentional infliction of emotional distress, a plaintiff must allege that: 1) the defendant intended or knew that emotional distress would likely result from its conduct; 2) the defendant's conduct was extreme and outrageous; 3) the defendant's conduct caused plaintiff distress; and 4) plaintiff's distress was severe. *Vorvis v. Southern New England Tel. Co.*, 821 F.Supp. 851, 855 (D.Conn. 1993) (*citing Petyan v. Ellis*, 200 Conn. 243, 253, 510 A.2d 1337 (1986)).

In interpreting what constitutes "extreme and outrageous" conduct, Connecticut courts have relied on the Restatement (Second) of Torts § 46, cmt. d (1965), which provides: "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *See DeLaurentis v. City of New Haven*, 220 Conn. 225, 266–67, 597 A.2d 807 (1991); *Petyan v. Ellis*, 200 Conn. at 254 n. 5, 510 A.2d 1337. Whether a defendant's conduct rises to the level of being "extreme and outrageous" is a question to be determined by the court in the first instance. *See, e.g., Johnson v. Chesebrough–Pond's USA Co.*, 918 F.Supp. 543, 552 (D.Conn.), *aff'd*, 104 F.3d 355 (2d Cir.1996).

The threshold issue is whether plaintiff has alleged extreme and outrageous conduct by the defendant. Here, plaintiff has not alleged that any of the employment actions taken by Shell were done in a manner so egregious or oppressive as to rise to the level of extreme and outrageous conduct. Defendant's alleged negligent failure to prevent Johnson's sexual harassment of plaintiff does not rise to the level of intentional, extreme and outrageous conduct that would support a claim of intentional infliction of emotional distress. Nor does plaintiff allege extreme or outrageous conduct when Fillion notified her that her employment was terminated. Thus, we hold that plaintiff has failed to allege conduct on the part of Shell from which a reasonable jury would be permitted to infer that Shell's conduct was sufficiently extreme and outrageous to support a claim for intentional infliction of emotional distress. *See Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1242 (2d Cir. 1995). Accordingly, we grant defendant Shell's motion for summary judgment on Count Ten.

### E. Negligent Infliction of Emotional Distress

Plaintiff asserts a claim of negligent infliction of emotional distress against Shell in Count Eleven, based on the discriminatory conduct and the termination of her employment. Under Connecticut law, "negligent infliction of emotional distress in the employment context arises only where it is 'base upon unreasonable conduct of the defendant in the termination process.'" *Malik v. Carrier Corp.*, 986 F.Supp. 86, 91 (D.Conn.1997) (*quoting Morris v. Hartford Courant Co.*, 200 Conn. 676, 681, 513 A.2d 66 (1986)). The mere termination of employment, even if wrongful, is not enough to sustain a claim for negligent infliction of emotional distress. The employer's conduct during the termination process must be egregious, outrageous, or "done in an inconsiderate, humiliating or embarrassing manner...." *Malik*, 986 F.Supp. at 92 (*quoting Skierkowski v. Creative Graphics Serv. Inc.*, No. CV 94–0463242S, 1995 WL 283945 at *5 (Conn.Super. May 5, 1995)).

From the evidence presented, no reasonable jury could find that the termination of plaintiff's employment was handled in a manner so unreasonable that the defendant knew or should have known that

its conduct involved an unreasonable risk of causing emotional distress which might result in illness or bodily harm. *Hill v. Pinkerton Sec. & Investigation Serv.*, 977 F.Supp. at 159; *Johnson v. Chesebrough–Ponds*, 918 F.Supp. at 552. Therefore, summary judgment is granted in favor of defendant Shell on Count Eleven of plaintiff's complaint.

### F. Tortious Breach of Employment Contract

 Plaintiff asserts in Count Twelve a claim that Shell tortiously breached the terms of plaintiff's employment contract when it discharged her. Aside from the bald allegation contained in the complaint, however, plaintiff has failed to show that she had entered into either an express or implied employment contract of a definite term with Shell. "Under Connecticut law, both contracts of permanent employment or for an indefinite term of employment are terminable at will by the employer without any requirement that the employer have good cause for such termination." *Casper v. Combustion Eng'g, Inc.*, No. CV 97–0570516S, 1998 WL 389215 (Conn.Super. June 23, 1998) (*citing Battista v. United Illuminating Co.*, 10 Conn.App. 486, 495, 523 A.2d 1356, (1987)). A "tortious breach of contract" claim is not a cause of action recognized by the Connecticut courts. *See Lavallee v. Container Graphics Corp.*, No. CV 90 0045497, 1991 WL 126456 (Conn.Super. June 28, 1991).

Here, plaintiff has failed to allege facts that would indicate that her employment relationship with Shell was other than employment at will. Similarly, plaintiff has failed to allege facts that would give rise to an implied or express contract between the parties to support the plaintiff's breach of contract claim. Therefore, summary judgment is granted in favor of defendant Shell on Count Twelve.

### CONCLUSION

For the reasons set forth above, this Court grants in part and denies in part defendants' motion for summary judgment. Summary judgment is GRANTED on all counts in favor of the individual defendants, Kenneth Johnson, Glenn Fillion, David Williams, and Jim Munson. As to defendant Shell Oil Co., summary judgment is DENIED on Counts One through Seven, and is GRANTED on Counts Ten, Eleven, and Twelve.

Given the age of this case, this Court directs the parties to prepare this case for trial this summer.

SO ORDERED.