Joyce VORVIS, Plaintiff,

v.

**SOUTHERN NEW ENGLAND TELEPHONE COMPANY and Frank Kulaga, Defendants.**

Civ. No. 3–91–CV–351 (WWE).

United States District Court,
D. Connecticut.

May 25, 1993.

Edward J. Dolan, Vincent N. Amendola, Jr., Greenberg & Costa, New Haven, CT, for plaintiff.

Margaret P. Mason, Jacqueline D. Bucar, Tyler, Cooper & Alcorn, New Haven, CT, David A. Ryan, Jr., Summa & Ryan, P.C., Waterbury, CT, for defendants.

## RULING ON MOTION TO DISMISS

EGINTON, Senior District Judge.

This action was removed to this court based on diversity of citizenship [1] and federal

---

1. Plaintiff is a resident of Florida. Southern New England Telephone Company is a Connecticut corporation. Frank Kulaga is a resident of Connecticut. Plaintiff seeks "more than" $15,- 000 in damages, and defendants, in their notice of removal, claim that the amount in controversy exceeds $50,000.

question jurisdiction.[2] Defendant has moved to dismiss the complaint, which contains state law claims arising out of her alleged mistreatment in the workplace. For the reasons stated below, the motion to dismiss will be granted in part and denied in part.

## FACTS

Plaintiff, Joyce Vorvis, was employed by defendant, Southern New England Telephone Company ("SNET"), from July 13, 1981 to June 2, 1989, under the terms and conditions of an employment contract. Frank Kulaga was her direct supervisor beginning September 1, 1988. From this time until the end of her employment, plaintiff alleges that she was subjected to extreme and outrageous harassment by Kulaga. She claims he continually subjected her to verbal abuse and caused her to work extra hours without compensation. She alleges that Kulaga made at least one false verbal statement about her job performance, which, along with the harassment, damaged her reputation. She alleges that Kulaga unfairly disciplined her for certain incompleted work assignments. As a result, she claims she suffered physical and emotional harm and was forced to leave her job on June 2, 1989. Defendants benefited from her departure, she contends, because SNET was in the process of reducing its workforce.

The first amended complaint contains eight counts. Count I alleges intentional infliction of emotional distress against Kulaga. Count II alleges intentional infliction of emotional distress against SNET as Kulaga's employer, and seeks punitive damages because of Kulaga's malicious or wanton conduct. Count III alleges negligence against Kulaga, which negligence caused emotional distress. Count IV seeks damages from SNET for ratifying Kulaga's conduct and for not terminating him. Count V alleges negligence against SNET for its failure to supervise or control its employee. Count VI alleges intentional interference with a contract against Kulaga concerning the employment contract between plaintiff and SNET. Count VII alleges slander against Kulaga. Count VIII alleges invasion of privacy against Kulaga.

Plaintiff does not allege that she filed a grievance under the employment contract or otherwise exhausted the pertinent grievance procedures. Rather, she argues that in this action, her state law tort claims are independent of her rights under the employment contract.

Defendants move to dismiss the amended complaint on the following grounds: (1) that plaintiff's claims are preempted by 29 U.S.C. § 185, as arising out of a collective bargaining agreement, and that the statute of limitations for claims under 29 U.S.C. § 185 has expired; (2) in the alternative, that plaintiff's claims are barred by the Connecticut Worker's Compensation Law, Conn.Gen.Stat. § 31–275 et seq.; and (3) that plaintiff has failed to state a claim upon relief can be granted.

## DISCUSSION

■■■ In considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted, a court is under a duty to determine whether the plaintiff has a valid claim under any possible theory. A motion to dismiss should not be granted "unless it appears beyond a doubt" that the plaintiff cannot support a claim entitling it to relief. *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 101, 2 L.Ed.2d 80 (1957). The pleader, however, must set forth sufficient information to outline the elements of the claim or to permit inferences to be drawn that these elements exist. For the purposes of a motion to dismiss, the court must take the allegations of the complaint as true and construe all reasonable inferences in favor of the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

### 1. Preemption by LMRA

Defendants contend that while plaintiff was employed at SNET, she was covered by a collective bargaining agreement. They ar-

---

**2.** The federal question is raised as a defense in defendants' notice of removal. Defendants contend that Section 301 of the Labor–Management Relations Act preempts most of the state law claims in the complaint.

gue that her mistreatment claims are preempted by federal statutory law, § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and can be pursued only through the agreement's grievance procedure. Vorvis does not dispute that she was covered by an employment contract. First Amended Complaint, Count VI, at 9. However, she argues that her claims transcend the employment relationship and thus are independent of the employment contract.

■■ Section 301 of the LMRA governs actions by an employee against an employer for breach of a collective bargaining agreement. *Dougherty v. American Telephone and Telegraph Co.*, 902 F.2d 201, 203 (2d Cir.1990). Section 301 provides in pertinent part:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). That section has been construed to permit individual employees to bring suit in federal court against employers. *See Smith v. Evening News Ass'n*, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962); *Dougherty v. American Telephone and Telegraph Co.*, 902 F.2d 201, 203 (2d Cir.1990). Before bringing such an action, the employee must exhaust grievance procedures provided by the relevant collective bargaining agreement. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 563, 96 S.Ct. 1048, 1056, 47 L.Ed.2d 231 (1976); *Dougherty*, 902 F.2d at 202.

■ There are exceptions to the exhaustion requirement. One is where the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance. *Vaca v. Sipes*, 386 U.S. 171, 186, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967). This does not apply here because plaintiff did not attempt to pursue the grievance procedure. Another exception is where the federal interest in uniform interpretation of collective bargain-ing agreements preempts certain state law tort actions. *Dougherty*, 902 F.2d at 203.

■ In *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 210–11, 105 S.Ct. 1904, 1910–11, 85 L.Ed.2d 206 (1985), the Supreme Court held that § 301 preempted an employee's state law tort claim for breach of a duty to act in good faith in paying disability benefits. It held that the preemptive effect of § 301 regarding contractual issues extends beyond suits alleging contract violations to suits alleging liability in tort. State law rights and obligations that do not exist independently of private agreements and that as a result can be waived or altered by an agreement of private parties, are preempted by those agreements. However, not every dispute concerning employment, or tangentially involving a provision of a collective bargaining agreement, is preempted by § 301 or other provisions of federal labor law. The test is whether the state tort law purports to define the meaning of the contract relationship. If it does, that law is preempted. *Allis–Chalmers*, 471 U.S. 202 at 211–13, 105 S.Ct. 1904 at 1911–12.

■ In *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), the Supreme Court held that a state law action alleging retaliatory discharge for filing a workers' compensation claim was independent of the collective bargaining agreement and therefore was not preempted by federal law. A state law claim is independent of the collective bargaining agreement for § 301 preemption purposes so long as the state law claim can be resolved without interpreting the agreement itself. *Lingle*, 486 U.S. 399 at 410, 108 S.Ct. 1877 at 1883.

■ Here, the gravamen of the amended complaint is plaintiff's alleged mistreatment in the workplace. She claims that Kulaga's actions constituted intentional infliction of emotional distress, negligent infliction of emotional distress, invasion of privacy, defamation, and tortious interference with a contract. Her claims against SNET are based upon SNET's responsibility for the individual acts of Kulaga.

The court finds that none of the plaintiff's state law claims require this court to construe her employment contract or any collective bargaining agreement which might have been in effect at the time of her employment. Therefore, no counts of the amended complaint are preempted by the LMRA. *Lingle*, 486 U.S. at 405, 108 S.Ct. at 1881.

## 2. *Intentional Infliction of Emotional Distress (Counts I, II)*

In Counts I and II, plaintiff alleges intentional infliction of emotional distress against Kulaga and SNET. She claims that from September 1, 1988 through June 2, 1989, SNET intentionally directed Kulaga to treat her in such a way as to cause severe emotional distress which would lead to her departure from SNET. This treatment began after she returned from foot surgery and while she was coping with the illness and death of her sister. The treatment allegedly took place almost every day for a period of over one year, and included chastising, criticism, humiliation in front of coworkers, threats to fire her, extra work assignments for the purpose of causing anxiety, uncompensated work on weekends and evenings, unwarranted vulgar remarks, and disciplinary actions for matters beyond her control. As a result, plaintiff allegedly suffered various physical and psychological injuries, including: tachycardia, fear, crying spells, insomnia, nervousness, headaches, nausea, depression, fear of future injuries, mental pain and anguish, loss of her job, inability to function with coworkers, and loss of work and personal relationships with coworkers.

The exclusivity provision of the Connecticut Worker's Compensation Act provides that:

An employer shall not be liable to any action for damages on account of personal injury sustained by a employee arising out of and in the course of his employment or on account of death resulting from personal injury so sustained, but an employer shall secure compensation for his employees as follows, except that compensation shall not be paid when the personal injury has been caused by the wilful and serious misconduct between employer and employees ...

Conn.Gen.Stat. § 31–284(a). Under the Workers' Compensation Act, an employee surrenders his or her right to bring common-law action against employer. *DeSantis v. Gaudioso*, 39 Conn.Sup. 222, 476 A.2d 149 (1983). Intentional tort claims are not barred if the actor is acting with the knowing authorization of the employer. *Jett v. Dunlap*, 179 Conn. 215, 217, 425 A.2d 1263 (1979). Thus, a claim will not be barred by the Workers' Compensation Act where the tort is intentional and where the defendant employer directed the supervisor to commit the tort.

Here, the exception for "personal injury ... caused by the wilful and serious misconduct between employer and employees" applies as to plaintiff's claims of intentional infliction of emotional distress. Plaintiff alleges an intentional tort that was knowingly authorized by the actor's employer. Thus, the Worker's Compensation Act does not bar this cause of action.

The next step is to determine whether plaintiff has made a claim for intentional infliction of emotional distress. Viewing the allegations in the complaint in the light most favorable to the plaintiff, the court finds that she does. Plaintiff has alleged in the complaint that: (1) defendant intended or knew that emotional distress would likely result from defendant's conduct; (2) defendant's conduct was extreme or outrageous; (3) defendant's conduct caused plaintiff's distress; and (4) plaintiff's emotional distress was severe. *Petyan v. Ellis*, 200 Conn. 243, 253, 510 A.2d 1337 (1986).

Accordingly, the motion to dismiss must be denied as to Counts I and II.

## 3. *Negligent Infliction of Emotional Distress (Counts III–V)*

Plaintiff alleges negligent infliction of emotional distress against Kulaga in Count III, and against SNET in Counts IV and V.

In Count III she claims that Kulaga unreasonably mistreated her as described above. In addition, she claims that he acted with the knowledge that the plaintiff was peculiarly susceptible to emotional distress, that he

abused his position of authority, and that he should have realized that his conduct involved an unreasonable risk of causing emotional distress which might result in illness or bodily injury. In Count IV, plaintiff alleges that damages should be imposed on SNET because SNET authorized Kulaga's conduct, was reckless in retaining Kulaga after learning of his proclivities to engage in abusive conduct, and was the employer of the employee who committed the tort. In Count V, plaintiff alleges negligent infliction of emotional distress against SNET. She claims that SNET failed to supervise or control Kulaga, its employee, and that SNET knew or should have known that he was likely to engage in such conduct. She claims that SNET failed to recognize Kulaga's incompetency as a supervisor, and that plaintiff suffered extreme emotional distress as a direct and proximate cause of SNET's negligence.

■ Under Connecticut law, the issue of compensability under the Workers' Compensation Act is determined by whether or not the worker's injury is one "arising out of and in the course of employment." *Williams v. Avco Lycoming, Div. of Textron, Inc.*, 755 F.Supp. 47, 51 (D.Conn.1991) (Workers' Compensation Act barred claim against employer for negligent infliction of emotional distress where plaintiff's alleged injuries arose out of and in the course of his employment); *cf., Fulco v. Norwich Roman Catholic Diocesan Corp.*, 27 Conn.App. 800, 609 A.2d 1034 (1992), *app. gr. in part*, 223 Conn. 917, 614 A.2d 821 (1992) (Worker's Compensation Act did not bar claim against employer for negligent infliction of emotional distress where alleged distress arose out of plaintiff's discharge, not out of conditions of his employment).

■ In the instant case, plaintiff's claim for negligent infliction of emotional distress is barred by the Connecticut Worker's Compensation Act because her alleged injuries arose out of and in the course of her employment, and because the exception for intentional torts does not apply.

Therefore, the motion to dismiss Counts III, IV, and V alleging negligent infliction of emotional distress must be granted.

### 4. *Tortious Interference with a Contract (Count VI)*

■ In Count VI, plaintiff claims tortious interference with a contract. She alleges that Kulaga knew of the employment contract and intended to interfere with the contract for his own benefit, in order to encourage plaintiff to quit her job. She alleges that he mistreated her, as detailed above, and that his conduct caused her to voluntarily terminate her employment.

Plaintiff fails to allege that the employer, SNET, directed Kulaga to commit the tort. Therefore, the Worker's Compensation Act bars the tortious interference with a contract claim, even though it is an intentional tort. *See Jett v. Dunlap*, 179 Conn. at 217, 425 A.2d 1263 (intentional tort claim is barred unless the actor is acting with the knowing authorization of the employer). Thus, the claim is barred because the exception in the Workers' Compensation Act exclusivity provision for intentional torts does not apply.

Accordingly, the motion to dismiss Count VI must be granted.

### 5. *Slander (Count VII)*

■ In Count VII, plaintiff alleges that defendant made false and malicious statements in front of coworkers about her role in a malfunction of telecommunications services in Waterbury. As a result, her reputation suffered.

The Workers' Compensation Act bars the slander claim because although she alleges an intentional tort, she does not allege that the tort was committed with the knowing authorization of the employer.

Therefore, the motion to dismiss as to Count VII must be granted.

### 6. *Invasion of Privacy (Count VIII)*

In Count VIII, plaintiff alleges that Kulaga's abusive conduct detailed in Count I amounted to invasion of the plaintiff's privacy.

This tort is not barred by the Workers' Compensation Act because it is an intentional tort and the complaint alleges in Count I that

Kulaga's tortious actions were committed with the knowing authorization of the employer.

The next step is to determine whether plaintiff has made a prima facie claim for invasion of privacy. Viewing the complaint in the light most favorable to the plaintiff, the court finds that she has not. Connecticut recognizes four distinct categories of invasion of privacy. One of these is "unreasonable intrusion upon the seclusion of another." *Goodrich v. Waterbury Republican–American, Inc.*, 188 Conn. 107, 127, 448 A.2d 1317 (1982). Here, plaintiff alleges that the defendant unreasonably intruded upon her seclusion. No facts are alleged, however, to support this characterization. Plaintiff therefore states no claim for invasion of privacy.

Accordingly, the motion to dismiss Count VIII must be granted.

## CONCLUSION

For the reasons stated above, the motion to dismiss is GRANTED as to Counts III through VIII, and DENIED as to Counts I and II.