**Donna K. ERICSON, Plaintiff,**

v.

**CITY OF MERIDEN, Mark G. Zebora, Caroline A. Ware a/k/a Caroline Beitman, and Richard L. Graham, Defendants.**

**No. 3:99CV2143 (GLG).**

United States District Court, D. Connecticut.

Sept. 25, 2000.

278

280

Janis C. Jerman, Hartford, CT, for Donna K. Ericson.

Christopher P. Hankins, Corp. Counsel's Office, Meriden, CT, for City of Meriden, Mark G. Zebora, Caroline A. Ware, Richard L. Graham.

## OPINION

GOETTEL, District Judge.

Pending before the Court is the Defendants' motion to dismiss Plaintiff's second amended complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. The complaint alleges nine counts: (1) violation of §§ 703 and 704 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e–2 and 2000e–3; (2) violation of Connecticut's Fair Employment Practices Act ("CFEPA"), Conn. Gen.Stat. §§ 46a–51 to –104; (3) deprivation of various rights, privileges and immunities secured by the United States Constitution (in particular, the right to freedom of speech, equal protection, and the right to be free from unlawful discriminatory employment practices), pursuant to

42 U.S.C. § 1983, against the individual Defendants; (4) a section 1983 claim against Defendant employer City of Meriden; (5) conspiracy to violate civil rights, pursuant to 42 U.S.C. § 1985; (6) failure to prevent conspiracy in violation of civil rights, pursuant to 42 U.S.C. § 1986; (7) breach of the implied covenant of good faith and fair dealing; (8) negligent infliction of emotional distress; and (9) intentional infliction of emotional distress.

Defendants now bring this motion to dismiss pursuant to Rule 12(b)(1), challenging the Court's subject matter jurisdiction as to any events which occurred prior to the statutory 180 day limit for filing administrative complaints with the State of Connecticut's Commission on Human Rights and Opportunities ("CCHRO"). Defendants have also moved to dismiss all counts pursuant to Rule 12(b)(6), claiming that each count fails to state a claim upon which relief can be granted.

For the reasons discussed below, Defendants' motion **[Doc. # 9]** is GRANTED in part and DENIED in part.

## BACKGROUND

For the purposes of this motion, the court assumes the following to be true. Plaintiff Donna K. Ericson commenced her employment with Defendant City of Meriden on May 2, 1982 as a secretary (the only female employee) in the Highway Division. Her immediate supervisor was Defendant Richard Graham. Although the complaint is not entirely clear in this regard, it appears that the Highway Division is a part of the Public Works Department, and that Graham reports to Defendant Mark Zebora, who is the Director of Parks and Public Works. Defendant Caroline Ware is the Personnel Director of the City of Meriden.

On March 19, 1997, Plaintiff entered the employees' break room in the Highway Division's workplace and overheard "racy language" coming from a videotape which several male Highway Division employees and a supervisor (not Defendant Graham) were viewing. Plaintiff complains that the offensive language included the male narrator apparently engaging in some braggadocio relating to the size of his genitalia, and remarking on women's lingerie. One of the employees commented, "Look at Donna; she's blushing." Another male employee said, "She's too old to blush." Embarrassed, Plaintiff left the break room but continued to overhear sexually explicit language and laughter coming from the room. She immediately called the supervisor from the break room "to tell him that the noise could be heard in the office and asked him to turn off the television." (2d Am.Compl.¶ 30.) She also complained to Defendant Zebora later that day. According to the complaint, the television and VCR, as well as pictures, swimsuit calendars and other personal materials, were removed from the break room the next day.

On the day after that, Graham complained to the Plaintiff about her reporting the incident to Zebora. Later that day and with Zebora's consent, Plaintiff spoke with a local newspaper reporter regarding the "television incident." An article detailing the event was published a few days later.

Plaintiff alleges that after publication of the newspaper article, the atmosphere in the office changed for the worse. The male workers refused to speak to her, and Graham began to remove some of her duties. Plaintiff concedes that seven of the male employees were suspended for one day, and that Graham and the supervisor who had viewed the videotape were suspended for three days. Plaintiff also alleges that she began to receive threatening phone calls at her home, with the callers stating that she "will be sorry" and that "we are going to get you."

Plaintiff also alleges in the complaint that the male employees engaged in harassing and retaliatory conduct at work, including barking at her, making disparag-

ing comments, yelling obscenities at her, refusing to look at her or speak to her, and vandalizing her car and personal property.

Plaintiff further alleges that although she complained to Graham and Zebora about her co-workers' conduct, they took no remedial action. She complained to Defendant Ware and to her union in April, 1997, and at some point thereafter, she filed a complaint with the Human Rights representative for the City of Meriden, Attorney Deborah L. Moore. Attorney Moore issued a report of her findings on September 11, 1997.[1] Plaintiff alleges that no remedial or disciplinary action was taken.

On December 2, 1997, Graham issued Plaintiff a written warning for discussing her complaint on the phone with Attorney Moore and with Defendant Ware. Plaintiff alleges that Graham accused her of maligning the department.

At some point thereafter, unhappy with the continuing ill treatment by her co-workers, Plaintiff requested a transfer to a position with different duties in another department, except that she did not want to be transferred to City Hall for personal reasons. On January 5, 1998, Plaintiff was involuntarily transferred to a similar clerical position at City Hall. She continued to report to Graham and Zebora.

In February 1998, Plaintiff filed a grievance with her union challenging the involuntary transfer, which was denied. She alleges that Graham told her in early May of 1998 that the transfer was temporary and would last for only one or two months. Nonetheless, she was notified by letter dated June 11, 1998 that her transfer to City Hall was permanent. She alleges that since her transfer, she has been denied overtime, which had been substantial prior to that.

On November 15, 1999, Plaintiff was notified that her position would be elimi-

nated on December 6, 1999. However, it is unclear whether her position was in fact eliminated on that date, since she claims that "[t]he harassment and retaliation continues to the date of the filing of this Amended Complaint [Jan. 13, 2000]," (2d Am.Compl.¶ 60), which seems to indicate that she is still employed by the City of Meriden.

Plaintiff filed her first set of complaints concurrently with the CCHRO and the Equal Employment Opportunity Commission ("EEOC") on May 4, 1998 (including four CCHRO charges and one EEOC complaint). She filed a second set of concurrent complaints on August 10, 1998 (six CCHRO charges and one EEOC complaint). The CCHRO issued ten Notices of Release of Jurisdiction on October 1, 1999, and the EEOC issued two Notices of Right to Sue on October 22, 1999. Plaintiff timely filed the original complaint in this action on November 3, 1999, within the 90 day period for filing suit pursuant to 42 U.S.C. § 2000e–5(f)(1).

### STANDARD OF REVIEW

When considering a motion to dismiss based on lack of subject matter jurisdiction pursuant to Rule 12(b)(1), Fed.R.Civ.P., a court must accept as true all material factual allegations in the complaint. However, argumentative inferences favorable to the party asserting jurisdiction should not be drawn. *Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.,* 968 F.2d 196, 198 (2d Cir.1992).

When deciding a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), Fed.R.Civ.P., a court must accept as true the complaint's factual allegations and must draw all reasonable inferences in favor of the plaintiff. *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.); *see also Allen v. WestPoint–Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991). A court

---

1. Defendant attached an unsigned copy of the report as an exhibit to its memorandum of law, urging the Court to consider it in ruling on this motion. We decline to do so. *See* discussion *infra.*

cannot grant a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). "The issue is not whether a plaintiff is likely to prevail ultimately, 'but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test.'" *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir.1995) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)) (additional citation omitted). Courts apply this standard with even greater force where the complaint arises from alleged civil rights violations. *Hernandez*, 18 F.3d at 136.

■ Defendant urges the Court to include extraneous documents (*viz.*, the newspaper article and Attorney Moore's report) in our consideration of the Rule 12(b)(6) motion. (Def.'s Mem. Supp. Mot. Dismiss Ex. 1, 2.) We decline Defendant's invitation. "If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 ...." Fed.R.Civ.P. 12(c). The Second Circuit has held that a court may consider documents attached to the complaint or incorporated by reference, as well as any document "upon which the plaintiff solely relies and which is integral to the complaint." *Cortec Indus. v. Sum Holding, L.P.*, 949 F.2d 42, 47 (2d Cir.1991). In that case, the circuit court reasoned that "[w]here plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated." *Id.* at 48. The court held that the district court could have considered, upon the motion to dismiss, certain stock transaction-related documents which were integral to the plaintiff's complaint because there was undisputed notice to the plaintiffs of their contents.

■ Here, Defendant argues that Plaintiff's claims are predicated on the newspaper article and Attorney Moore's report, and therefore, the Court may consider them as evidence in considering the instant motion even if the complaint does not explicitly refer to them. We disagree. Plaintiff's claims of gender discrimination and sexual harassment are based on conduct which occurred prior to the publication of the newspaper article and Attorney Moore's report. Her claims of retaliatory conduct are likewise not founded on the documents Defendant urges. Thus, we exclude from our consideration the contents of the newspaper article and Attorney Moore's report and consider only matters alleged within the four corners of the complaint in ruling on this motion.

### DISCUSSION

#### I. PLAINTIFF'S TITLE VII and CFEPA CLAIMS

Count One of the complaint alleges a violation of Title VII's provisions prohibiting unlawful discrimination in employment, 42 U.S.C. § 2000e-2, and retaliation based on opposition to unlawful employment practices, 42 U.S.C. § 2000e-3. Count Two alleges a violation of Connecticut's Fair Employment Practices Act ("CFEPA"), Conn. Gen.Stat. § 46a-60. Connecticut courts look to federal precedent in the employment discrimination arena for guidance in enforcing the state anti-discrimination statutes. *Hill v. Pinkerton Sec. & Investigation Serv., Inc.*, 977 F.Supp. 148, 153 (D.Conn.1997); *see also Levy v. Commission on Human Rights & Opportunities*, 236 Conn. 96, 103, 671 A.2d 349 (1996). Therefore, to the extent Plaintiff's CFEPA claim is coextensive with her Title VII claim, we consider Counts One and Two together. *See Brittell v. Department*

*of Correction,* 247 Conn. 148, 164, 717 A.2d 1254 (1998).

### A. *Individual Defendants*

 We turn our attention first to Plaintiff's Title VII and CFEPA claims against the individual defendants. Title VII forbids "an employer ... (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e–2(a)(1). Liability under Title VII does not extend to employers with fewer than fifteen employers. 42 U.S.C. § 2000e(b). There is no provision, however, for personal liability of individual employees. *See Tomka v. Seiler Corp.,* 66 F.3d 1295, 1314–17 (2d Cir.1995) (holding that "an employer's agent may not be held individually liable under Title VII"). Plaintiff admits that the City of Meriden was her employer; she asserts no claim that any of the individual defendants was her employer. Accordingly, we dismiss the Title VII claims in Count One against the individual defendants.

 We also dismiss the CFEPA claims in Count Two against the individual defendants. The Connecticut Supreme Court has not yet addressed the issue of supervisory employees liability under CFEPA, and there is a lack of consensus on this issue among the lower Connecticut courts. *See Wasik v. Stevens Lincoln–Mercury, Inc.,* No. 3:98CV1083(DJS), 2000 WL 306048 at *5 (D.Conn. Mar.20, 2000) (collecting cases). In the absence of controlling precedent, this Court must determine how the Connecticut Supreme Court would decide the issue. *Id.* (citing *Continental Cas. Co. v. Pullman, Comley, Bradley & Reeves,* 929 F.2d 103, 105 (2d Cir.1991)). This Court has previously held that, under certain circumstances, supervisory employees may be liable under CFEPA for discriminatory employment practices. *See Thompson v. Service Merchandise, Inc.,* No. 3:96CV1602(GLG), 1998 WL 559735

(D.Conn. Aug.11, 1998) (adhering to the holding in *Murphy v. Burgess,* No. 3:96CV1987(AHN), 1997 WL 529610 (D.Conn. Jul. 16, 1997)). However, we do not find circumstances appropriate for supervisory liability alleged here.

Although Plaintiff claims that her co-workers engaged in harassing and retaliatory conduct, she has failed to allege any incidents of discriminatory conduct against Defendant Ware or Zebora. The only incident she alleges against Defendant Graham is that he issued a written warning to her for discussing her complaints on the telephone. That is not sufficient to give rise to a discrimination or retaliation claim. Moreover, Plaintiff does not attribute the decision to transfer her to City Hall to any of the individual defendants. Furthermore, she does not allege that Defendant Ware, as the Personnel Director of the City of Meriden, had supervisory power, control, or authority over her. Thus, we conclude that Plaintiff has failed to state a claim of supervisory liability under CFEPA as to the individual defendants, and we accordingly dismiss Count Two as to those defendants.

### B. *Defendant City of Meriden*

Defendant City of Meriden moves to dismiss Counts One and Two pursuant to Rule 12(b)(1) as to any events which predate the relevant filing periods for claims under Title VII and CFEPA, contending that the Court lacks subject matter jurisdiction with respect to those events. Defendant also moves to dismiss pursuant to Rule 12(b)(6), arguing that all counts fail to state claims upon which relief can be granted. The Court considers the jurisdictional challenge first. *United States ex rel. Kreindler v. United Techs. Corp.,* 985 F.2d 1148, 1155–56 (2d Cir.1993).

Defendant contends that the Court does not have subject matter jurisdiction over Plaintiff's claims with respect to discriminatory conduct which occurred prior to November 5, 1997, 180 days prior to the May 4, 1998 EEOC and CCHRO filings,

because Plaintiff failed to exhaust her administrative remedies with respect to those acts. Plaintiff counters that the 180–day limitation applies only to the jurisdiction of the CCHRO and not to the jurisdiction of this Court.

Although filing a charge with the EEOC is a jurisdictional prerequisite to a private civil action under Title VII, *see* 42 U.S.C. § 2000e–5(f)(1), filing a *timely* charge of discrimination with the EEOC or a state agency is not a jurisdictional prerequisite to suit in federal court. *Zipes v. TWA, Inc.,* 455 U.S. 385, 392, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982); *Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 712 (2d Cir.1996). Rather, the timely filing requirement is analogous to a statute of limitations which is subject to equitable considerations such as tolling, waiver, and estoppel. *Zipes,* 455 U.S. at 392, 102 S.Ct. 1127; *Van Zant,* 80 F.3d at 712; *see also Anjelino v. New York Times Co.,* 200 F.3d 73, 87–88 (3d Cir.1999). However, only events occurring within the proper filing period are actionable under Title VII. *Van Zant,* 80 F.3d at 712.

The parties do not dispute that Plaintiff filed complaints with the CCHRO and the EEOC and that both agencies issued notices of right to sue. Rather, they dispute the proper filing period and whether Plaintiff's EEOC and CCHRO filing was timely. The jurisdictional prerequisites having been satisfied, this Court may properly exercise subject matter jurisdiction over Plaintiff's Title VII and CFEPA claims, and Defendant's motion to dismiss pursuant to Rule 12(b)(1) is DENIED. The Court will consider Defendant's timeliness and exhaustion defenses in the context of its Rule 12(b)(6) motion.

### 1. Relevant filing period

Defendant contends that Counts One and Two fail to state a claim upon which relief can be granted, because Plaintiff did not file her claim with the EEOC within 180 days of the alleged discriminatory conduct. Plaintiff counters that the appropriate EEOC filing period is 300 days.

Title VII requires that claims be based on events occurring within a limited time period prior to the filing of an administrative complaint. An EEOC charge must be filed within either 180 or 300 days of the alleged discrimination.[2] "Unfortunately, the 300–day rule is qualified in ways that bedevil lawyers as well as laypersons." *Ford v. Bernard Fineson Dev. Ctr.,* 81 F.3d 304, 305 (2d Cir.1996). The 300–day rule applies to so-called "deferral states," *i.e.,* states which have their own anti-discrimination laws and administrative agencies. Connecticut is such a deferral state. *See Doe v. Odili Techs., Inc.,* No. 3:96CV1957(AHN), 1997 WL 317316 at *2 & n. 3 (D.Conn. May 25, 1997). Title VII provides that state agencies in deferral states have exclusive jurisdiction over employment discrimination charges for the first sixty days after filing, unless the state agency terminates its proceedings during that time. *See* 42 U.S.C. § 2000e–5(c). If a complainant files charges concurrently with a state agency and the EEOC, the EEOC holds the charge in "suspended animation" until it can assume jurisdiction over the matter. *See EEOC v. Commercial Office Prods. Co.,* 486 U.S. 107, 111, 108 S.Ct. 1666, 100 L.Ed.2d 96 (1988).

**2.** The relevant subsection of Title VII provides:

A charge under this section must be filed within one hundred and eighty days after the alleged unlawful employment practice occurred ... except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice ... such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier ....

42 U.S.C. § 2000e–5(e)(1).

■ Plaintiff in this case filed her charges concurrently with the CCHRO and the EEOC, and, because Connecticut is a deferral state, the 300–day rule applies. Thus, any alleged discriminatory acts which occurred prior to July 8, 1997 (300 days prior to Plaintiff's first EEOC filing of May 4, 1998) are time-barred and may not be considered as a basis for relief under Title VII. The relevant time period for filing with the CCHRO, however, is limited to 180 days.[3] Thus, any allegations of discriminatory conduct which occurred prior to November 5, 1997 (180 days prior to the plaintiff's May 4, 1998 CCHRO filing) are time-barred and may not be considered as a basis for relief under CFEPA.

As to alleged discriminatory acts which occurred between July 8, 1997 and November 5, 1997, Plaintiff's failure to file charges on a timely basis with the CCHRO does not preclude the application of the extended 300–day federal filing period to her Title VII claim. *See EEOC v. Commercial Office Prods. Co.,* 486 U.S. at 122–25, 108 S.Ct. 1666. Although a state law claim in Connecticut is time-barred when filed after the 180–day period, the same claim brought under federal law is timely if filed within 300 days of the alleged discriminatory conduct. Thus, timely filing of a state law claim is not a prerequisite to a Title VII claim.

### 2. Continuing violation doctrine

■ Plaintiff urges the Court to toll the limitations period under the continuing violation doctrine. That doctrine extends the limitations period for all claims of discriminatory acts committed under an ongoing policy or practice of discrimination, even if those acts standing alone would have been barred by the statute of limitations. *Annis v. County of Westchester,* 136 F.3d 239, 246 (2d Cir.1998); *Lightfoot v. Union Carbide Corp.,* 110 F.3d 898, 907 (2d Cir.1997). If there is a continuing violation, the limitations period begins to run when the last discriminatory act took place. *Lightfoot,* 110 F.3d at 907. The Second Circuit has emphasized that "multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." *Lambert v. Genesee Hosp.,* 10 F.3d 46, 53 (2d Cir.1993). However, a continuing violation may be found "where there is proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Cornwell v. Robinson,* 23 F.3d 694, 704 (2d Cir.1994).

■ The court in *Johnson v. Nyack Hospital,* 891 F.Supp. 155 (S.D.N.Y.1995), identified three factors for consideration in determining whether alleged discriminatory acts are discrete, independent events or elements in a continuing violation. These factors are: (1) whether the alleged acts involve the same type of discrimination; (2) whether they recur frequently or are more in the nature of isolated employment decisions, and (3) whether they exhibited a degree of permanence that should trigger the employee's duty to assert his rights. *Id.* The continuing violation doctrine is available, however, only if "the circumstances are such that a reasonable person in the plaintiff's position would not have sued earlier." *Id.* at 165; *see also Morris v. Amalgamated Lithographers,* 994 F.Supp. 161, 164 (S.D.N.Y.1998).

Under the "continuing violation" standard enunciated by the Second Circuit, we must determine whether there were related incidents of discrimination that the employer permitted to continue unremedied for so long as to amount to a discriminatory policy or practice. Thus, the Court must examine the comments made by Plaintiff's co-workers in connection with the television incident and their conduct

---

**3.** "Any complaint filed pursuant to this section must be filed within one hundred and eighty days after the alleged act of discrimination ...." Conn. Gen.Stat. § 46a–82(e).

following the newspaper article's publication on March 22, 1997, as well as the circumstances surrounding Plaintiff's transfer. Specifically, Plaintiff alleges that her duties were reduced and her co-workers refused to speak to her, barked at her, vandalized her car and personal property, yelled obscenities at her and made disparaging comments to her. She maintains that the continuing harassment and retaliatory conduct by her supervisors and co-workers without remedial action, could only be the result of an ongoing policy of discrimination. Defendant, on the other hand, asserts that these incidents are too separate and distinct from one another to constitute a continuing violation. We determine first whether there was a continuing violation with respect to Plaintiff's sex discrimination claim.

### 3. Sex discrimination claim

 Title VII prohibits an employer from discriminating against an employee on the basis of, *inter alia,* sex.[4] The Supreme Court has held that Title VII's prohibitions extend to discriminatorily hostile or abusive work environments. *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). In order to prevail on a hostile environment sexual harassment claim under Title VII, a plaintiff must establish two elements. *Perry v. Ethan Allen, Inc.,* 115 F.3d 143, 149 (2d Cir.1997). First, she must prove that the harassment was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.,* 510 U.S. at 21, 114 S.Ct. 367 (internal quotation marks omitted); *see also Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). Second, a plaintiff must show that a specific basis exists

for imputing the conduct that created the hostile environment to the employer. *Perry,* 115 F.3d at 149. An employer is liable for co-worker harassment if "the employer either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it." *Id.* (quoting *Karibian v. Columbia University,* 14 F.3d 773, 780 (2d Cir.1994)).

 The Supreme Court in *Harris* instructed courts to determine whether an environment is sufficiently hostile or abusive by "looking at all the circumstances," including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris,* 510 U.S. at 23, 114 S.Ct. 367. The incidents must be "more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Faragher,* 118 S.Ct. at 2283 n. 1 (citations omitted). "[O]ne of the critical inquiries in a hostile environment claim must be the environment. Evidence of a general work atmosphere . . .—as well as evidence of specific hostility directed toward the plaintiff—is an important factor in evaluating the claim." *Perry,* 115 F.3d at 149 (*quoting Hicks v. Gates Rubber Co.,* 833 F.2d 1406, 1415 (10th Cir.1987)) (internal quotations and emphasis omitted). The Supreme Court has repeatedly emphasized that simple teasing, offhand comments, and isolated incidents, unless extremely serious, will not amount to discriminatory changes in the terms and conditions of employment. *See, e.g., Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). Title VII is not intended to serve as a "general civility code for the American workplace." *Id.* The Su-

---

4. The relevant subsection of Title VII provides:

It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate

against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . .

42 U.S.C. § 2000e–2(a).

preme Court has emphasized that "conduct must be extreme to amount to a change in the terms and conditions of employment . . . ." *Faragher*, 118 S.Ct. at 2284. Furthermore, "isolated remarks or occasional episodes of harassment will not merit relief under Title VII; in order to be actionable, the incidents of harassment must occur in concert or with a regularity that can reasonably be termed pervasive." *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1305 n. 5 (2d Cir.1995). However, "harassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex." *Oncale*, 118 S.Ct. at 1002. Thus, to prevail on a hostile work environment claim, the plaintiff must show that the workplace was permeated with discriminatory intimidation, ridicule, or insult that was sufficiently severe or pervasive to alter the conditions of her employment. *Gallagher v. Delaney*, 139 F.3d 338, 347 (2d Cir.1998); *Tomka*, 66 F.3d at 1305.

 In this case, Plaintiff's claim that there was a continuing violation of her right to be free from sex discrimination cannot prevail. She has alleged only one incident (the television incident in which her co-workers teased her for blushing when she overheard "racy language") which could conceivably support an inference of discrimination based on her sex. The later incidents of hostile behavior by her co-workers toward her (barking at her, refusing to speak to her, etc.) occurred after the television and VCR were removed from the break room, several co-workers and two supervisors were suspended, and the newspaper article was published. While these allegation support

the retaliation claim, which we discuss further below, they do not support an inference that gender-based animus prompted the hostility. Plaintiff has failed to allege any conduct within the 300 day filing period in support of her sex discrimination claim. Therefore, we decline to extend the limitations period for the filing of Plaintiff's sex discrimination claim.

Based solely on the television incident which occurred prior to Title VII's 300–day filing period and CFEPA's 180–day filing period, Plaintiff's claim of sex discrimination is untimely. We therefore grant Defendant City of Meriden's motion to dismiss the sex discrimination claims in Counts One and Two.

### 4. Retaliation claim

We turn our attention next to Plaintiff's retaliation claims, brought under Title VII[5] and CFEPA.[6]

 In order to establish a prima facie claim of retaliation, a plaintiff must show that: 1) she engaged in a protected activity; 2) the employer was aware of the activity; 3) the employer took adverse action against the plaintiff; and 4) there is a causal connection between the protected activity and the adverse action. *Tomka*, 66 F.3d at 1308; *Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 66 (2d Cir.1998); *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir.1996).

 Here, Plaintiff has alleged sufficient facts to establish a prima facie claim of retaliation based on her timely charge that her employer engaged in unlawful retaliation by involuntary transferring her

---

5. The relevant subsection of Title VII provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter
> . . . .

42 U.S.C. § 2000e–3(a).

6. The relevant subsection of CFEPA provides:

It shall be a discriminatory practice in violation of this section:

> . . . .
> (4) For any person, employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because he has opposed any discriminatory employment practice or because he has filed a complaint or testified or assisted in any proceeding [pursuant to CFEPA's complaint procedure provisions].

Conn. Gen.Stat. § 46a–60(a).

and reducing her duties and overtime hours after she voiced opposition to what she perceived as sex discrimination. In order to maintain her retaliation cause of action, Plaintiff need not establish that the conduct she opposed actually amounted to sex discrimination in violation of Title VII. *See Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir.1998). A retaliation claim may be based on Plaintiff's "good faith, reasonable belief that the underlying challenged actions of the employer violated the law." *Id.*

▮ Furthermore, we will extend the limitations period under the continuing violation doctrine to include the retaliatory conduct of her co-workers following the television incident of March 19, 1997. Plaintiff has adequately pleaded specific and related instances of retaliatory conduct, and she has alleged that her employer allowed the conduct to continue unremedied long enough to amount to a discriminatory policy or practice. *Cornwell*, 23 F.3d at 704. Although Plaintiff concedes that several employees were suspended following the television incident, she alleges that they were not disciplined following her complaints about their retaliatory conduct to her supervisor, the union, and the Human Rights representative. In addition, we find that the conduct was not so severe that a reasonable person in the Plaintiff's position would have sued earlier. *See Johnson v. Nyack Hosp.*, 891 F.Supp. 155 (S.D.N.Y. 1995).

Of course, it is possible that the co-workers retaliated against Plaintiff merely for her role in having the television and VCR removed from the break room, or, as Defendant asserts, due to personality conflicts. That, however, is an issue of fact for the jury. Drawing all reasonable inferences in Plaintiff's favor, we find that the alleged incidents following March 19, 1997 and continuing through the date of Plaintiff's transfer are sufficiently related, ongoing, and unremedied as to amount to a discriminatory policy or practice, and thus,

we apply the continuing violation doctrine to include those incidents in consideration of Plaintiff's retaliation claims. Accordingly, we deny Defendant City of Meriden's motion to dismiss the retaliation claims in Counts One and Two.

## II. OTHER FEDERAL CLAIMS

### A. Section 1983 Claims

In Counts Three and Four, Plaintiff asserts claims pursuant to 42 U.S.C. § 1983 against the individual Defendants and the Defendant employer, respectively, alleging constitutional violations of the First Amendment right to free speech and the right to equal protection of the laws secured by the Fourteenth Amendment. Plaintiff also asserts a violation of her statutory right to be free from unlawful discriminatory employment practices pursuant to Title VII.

▮ A section 1983 claim, if based on substantive rights distinct from Title VII, is not precluded by a concurrent Title VII claim. *Saulpaugh v. Monroe Community Hosp.*, 4 F.3d 134, 143 (2d Cir.1993) (*quoting Carrero v. New York City Housing Auth.*, 890 F.2d 569, 575–76 (2d Cir. 1989)). However, a plaintiff cannot use section 1983 to circumvent Title VII's limitations on damages and shorter statute of limitations. *Moche v. City Univ. of N.Y.*, 781 F.Supp. 160, 168 (E.D.N.Y.1992); *see also Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 375–76, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979). "A plaintiff may assert a claim under section 1983 if some law other than Title VII is the source of the right alleged to have denied." *Saulpaugh*, 4 F.3d at 143. Where a plaintiff alleges Title VII and § 1983 violations concurrently, she must "sufficiently distinguish[ ] her § 1983 claim from her Title VII claim to permit suit on both." *Carrero*, 890 F.2d at 576. "[A]lthough Title VII supplements and overlaps § 1983, it remains an exclusive remedy when a state or local employer violates only Title VII." *Moche*, 781 F.Supp. at 168 (*quoting John-*

*ston v. Harris County Flood Control Dist.,* 869 F.2d 1565, 1576 (5th Cir.1989)). Therefore, we will not consider Plaintiff's section 1983 claim to the extent it is based solely on a violation of Title VII. We will examine, however, her First Amendment and Equal Protection claims.

### 1. First Amendment claim

Whether the First Amendment protects public employees' speech depends on whether the speech relates to matters of public concern or is merely a matter of personal interest. *Connick v. Myers,* 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *see also Pickering v. Board of Educ.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). The Supreme Court has held that adverse employment action taken because of speech on matters of public concern is actionable under the First Amendment, while speech on matters of personal interest merits no greater First Amendment protection than that of non-public employees. *Connick,* 461 U.S. at 147, 103 S.Ct. 1684.

Although the complaint does not specify precisely what conduct violated Plaintiff's free speech rights, we assume the claim is based on the alleged retaliation against her opposition to what she perceived as a hostile workplace. Her complaint is based on her individual employment situation, and is therefore personal in nature. Plaintiff's speech did not address system-wide discrimination such that it could be said to involve matters of public concern. *See Saulpaugh,* 4 F.3d at 143. Thus, Plaintiff has failed to state a claim under the First Amendment.

### 2. Equal Protection claim

Plaintiff's equal protection claim also fails. A plaintiff may state a section 1983 claim for a violation of the Fourteenth Amendment's equal protection clause against a public official for improper sexual conduct toward an employee that created a hostile work environment. *Saulpaugh,* 4 F.3d at 143–44. However, an employer's retaliation against an employee's EEOC charge or complaint filed under Title VII is a right remedied exclusively through Title VII. *Moche,* 781 F.Supp. at 168. Therefore, we must determine whether Plaintiff states an equal protection claim based on gender discrimination or retaliation.

Plaintiff alleges one incident involving "racy language" which we have already found to be time-barred as to Plaintiff's Title VII claim. Although that conduct would fall within a section 1983 claim's three-year statute of limitations, that incident, standing alone, is not sufficiently severe to support either her Title VII claim or a claim of intentional discrimination under the Equal Protection Clause. Plaintiff has allege no other facts which could support an inference of pervasive sexual harassment or gender discrimination. Thus, Plaintiff has failed to state a section 1983 claim based on gender discrimination.

Plaintiff does allege that, after she voiced opposition to the videotape incident, her co-workers refused to speak to or look at her, barked at her, yelled obscenities at her, vandalized her car and personal property, and generally behaved rudely toward her. Drawing all inferences in favor of the Plaintiff, as we must for the purposes of this motion, we find this conduct supports Plaintiff's retaliation claim. However, we find no facts to support an allegation that gender-based animus motivated the conduct. Because the gravamen of Plaintiff's claim as to this conduct is retaliation, it is exclusively remedied through Title VII. Thus, Plaintiff has failed to state a section 1983 claim based on a violation of the equal protection clause. Thus, we grant Defendants' motion to dismiss Counts Three and Four.

### B. Sections 1985 and 1986 Claims

In Counts Five and Six, Plaintiff asserts claims against all Defendants pursuant to 42 U.S.C. §§ 1985(3) and 1986, respective-

ly, claiming that they conspired to violate her civil rights and neglected to prevent the conspiracy.

 In order to prevail on a cause of action under section 1985(3), a plaintiff must allege: (1) a conspiracy; (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) a deprivation of a right or privilege of a citizen of the United States, or an injury to the plaintiff's person or property. *Traggis v. St. Barbara's Greek Orthodox Church*, 851 F.2d 584, 586–87 (2d Cir.1988). Conspiracies motivated by discrimination against women are encompassed by section 1985(3). *See New York State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1359 (2d Cir.1989). However, the Supreme Court has held that section 1985(3) does not provide a remedy for retaliation in violation of Title VII. *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993) (*citing Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979)).

 Moreover, "a complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." *Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir.1983). Here, Plaintiff has allege no facts which could support an inference of a conspiracy to violate her civil rights. She has failed to show that the Defendants agreed, either expressly or impliedly from the circumstances, to violate her civil rights. Furthermore, where a section 1985 cause of action does not lie, there can be no violation of section 1986. *See, e.g., Koch v. Mirza*, 869 F.Supp. 1031 (W.D.N.Y.1994); *Hahn v. Sargent*, 523 F.2d 461, 469–70 (1st Cir.1975). Therefore, we grant Defendants' motion to dismiss Counts Five and Six.

## III. STATE LAW CLAIMS

### A. Breach of Implied Covenant of Good Faith and Fair Dealing

 In Count Seven, Plaintiff asserts a claim for breach of the implied covenant of good faith and fair dealing based on the Defendants' allegedly discriminatory conduct. As this Court has previously held, under Connecticut law, the implied covenant of good faith and fair dealing is not an independent requirement but instead arises from and is dependent upon the existence of an enforceable contract. *Rose v. James River Paper Co.*, 2 F.Supp.2d 245, 255 (D.Conn.1998). Here, Plaintiff has not alleged that any employment contract existed. Moreover, to the extent Plaintiff can prove her retaliation claim, she has an adequate remedy under Title VII. Accordingly, we grant Defendants' motion to dismiss Count Seven.

### B. Negligent Infliction of Emotional Distress

 In Count Eight, Plaintiff asserts a claim of negligent infliction of emotional distress. Under Connecticut law, "negligent infliction of emotional distress in the employment context arises only where it is 'based upon unreasonable conduct of the defendant in the termination process.'" *Malik v. Carrier Corp.*, 986 F.Supp. 86, 91 (D.Conn.1997) (quoting *Morris v. Hartford Courant Co.*, 200 Conn. 676, 682, 513 A.2d 66 (1986)). The employer's conduct during the termination process must be egregious, outrageous, or "done in an inconsiderate, humiliating or embarrassing manner ...." *Malik*, 986 F.Supp. at 92 (quoting *Skierkowski v. Creative Graphics Serv. Inc.*, No. CV 94–0463242S, 1995 WL 283945 at *5 (Conn.Super. May 5, 1995)).

Plaintiff has failed to allege any circumstances whatsoever surrounding the termination of her employment, other than to assert that her position was eliminated. It is unclear from the complaint whether she continues to be employed by the City of Meriden. In any event, Plaintiff has failed to allege unreasonable or even merely in-

considerate conduct by the Defendants in connection with the termination of her employment. Therefore, we grant Defendants' motion to dismiss Count Eight.

### C. Intentional Infliction of Emotional Distress

Plaintiff asserts a claim of intentional infliction of emotional distress in Count Nine. She alleges in conclusory fashion that the Defendants intended to inflict severe emotional distress, that they knew or should have known that their conduct would cause severe emotional distress, and that their conduct was extreme, dangerous, and outrageous.

Under Connecticut law, in order to state a cause of action for intentional infliction of emotional distress, a plaintiff must allege that: 1) the defendant intended or knew that emotional distress would likely result from its conduct; 2) the defendant's conduct was extreme and outrageous; 3) the defendant's conduct caused plaintiff distress; and 4) plaintiff's distress was severe. *Vorvis v. Southern New England Tel. Co.*, 821 F.Supp. 851, 855 (D.Conn.1993) (citing *Petyan v. Ellis*, 200 Conn. 243, 253, 510 A.2d 1337 (1986)).

In interpreting what constitutes "extreme and outrageous" conduct, Connecticut courts have relied on the Restatement (Second) of Torts § 46, cmt. d (1965), which provides: "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *See DeLaurentis v. City of New Haven*, 220 Conn. 225, 266–67, 597 A.2d 807 (1991); *Petyan v. Ellis*, 200 Conn. at 254 n. 5, 510 A.2d 1337. Whether a defendant's conduct rises to the level of being "extreme and outrageous" is a question to be determined by the court in the first instance. *See Johnson v. Chesebrough–Pond's USA Co.*, 918 F.Supp. 543, 552 (D.Conn.).

Here, Plaintiff has failed to allege any conduct so egregious or oppressive as to rise to the level of extreme and outrageous conduct. The fact that Plaintiff's co-workers were viewing a videotape with sexual content during working hours, the comments they made to her during that incident, and their subsequent retaliatory conduct, if proven, may be offensive but cannot be said to be atrocious or utterly intolerable by society. Neither can Plaintiff's job transfer, albeit to an undesirable location, be termed extreme or outrageous. Accordingly, we grant Defendants' motion to dismiss Count Nine.

### CONCLUSION

For the foregoing reasons, Defendant City of Meriden's motion to dismiss [**Doc. # 9**] is DENIED as to Counts One and Two, and GRANTED as to all remaining Counts. The individual Defendants' motion is GRANTED as to all Counts.

**SO ORDERED.**